Kenneth BLAIR, Appellant,

v.

INA OF TEXAS, Appellee.

No. 13–84–020–CV

Court of Appeals of Texas,
Corpus Christi.

Dec. 13, 1984.

Rehearing Denied Jan. 31, 1985.

James B. Ragan, Corpus Christi, for appellant.

Edward O. Garcia, Stone & Thompson, Corpus Christi, for appellee.

Before UTTER, YOUNG and GONZALEZ, JJ.

## OPINION

UTTER, Justice.

Appellant brought suit to recover worker's compensation benefits for disability resulting from a heart attack. Following a jury trial, the trial court entered judgment for appellee based upon the jury's failure to find that appellant's heart attack occurred in the course of employment. We reverse and remand.

In his two points of error, appellant challenges the legal and factual insufficiency of the evidence to support the following jury finding:

### ISSUE NO. 2

Do you find from a preponderance of the evidence that Kenneth Blair's heart attack was in the course of his employment by E & P Trucking Company?

A "heart attack" is in the course of employment if it is produced or precipitated by an employee's work or conditions of his employment. Otherwise, a heart attack is not in the course of employment, even if it occurs on the job.

Answer "We Do" or "We Do Not."

ANSWER: We Do Not.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

On December 22, 1981, appellant had been employed as a crane truck operator for E & P Trucking Company for approximately four months. That afternoon, appellant washed his crane truck and painted some portions of the truck. While cleaning and painting the truck, appellant noticed that the crane's winch cable had become frayed and decided to replace the old cable. The old cable was made of ⅝ inch steel wire cable and was approximately 200 feet long.

In attempting to change out the old cable, appellant first unspooled the frayed wire cable from the winch drum on the crane truck and then straightened out the cable on the ground. Appellant then rolled up the wire cable into a coil "like you do a garden hose" and bound the wire cable together. The rolled-up cable weighed "about a hundred to two hundred pounds." To dispose of the rolled-up cable, appellant "rolled" the cable "about two or three hundred feet" to a scrap pile at the truck yard. During the process of rolling the cable to the scrap pile, the rolled-up cable would occasionally fall and would have to be picked up by appellant before it could be rolled further.

After the rolled-up cable was deposited at the scrap pile, appellant began walking back to his crane truck. About halfway back to his crane truck, appellant began "feeling bad"; he felt "tired," "felt weak and started sweating." Appellant was able to return to and to climb into his truck. He was later discovered by fellow employees, who found him sitting in his truck, slumped over the steering wheel and "soaking wet."

The deposition testimony of Dr. D.L. Woodson, Jr., was the only testimony of a medical expert produced at trial. Dr. Woodson testified that, prior to the heart attack, appellant apparently had a severe atherosclerotic blockage of three of his coronary arteries—"the right one was almost a 100 percent plugged up on the catheterization. The left one was 99 percent plugged up.... And he had 90 percent occlusion of his third one"—and that appellant's heart attack was caused by a complete occlusion of the right coronary artery. Dr. Woodson further testified that, when the arteries were almost totally blocked, "the heart attack can occur suddenly, without doing anything," and that appellant, in his "precarious situation" before the heart attack, "was on the verge of having a heart attack at anytime, it didn't matter what he was doing." Dr. Woodson also gave his opinion that, regarding appellant's activity

in the disposition of the old cable, he would not consider rolling "like a car tire" the coil of old cable, which "weighed about one hundred pounds," to the scrap pile to be "unusually strenuous activity, particularly in December when it's not that hot." However, Dr. Woodson, in answer to questions by appellant's attorney, testified:

> Q. No. I'm asking you specifically if you think that activity caused him to have a heart attack when it did, within reasonable medical probability, as opposed to possibility.
>
> A. I would have to say that that amount of activity could cause you to have your heart attack start right after it, if you had that bad of a lesion.

Dr. Woodson further testified:

> I would have to say, if we are saying that the heart attack wouldn't have occurred at that exact moment and maybe it would have occurred an hour later—that it probably wouldn't have occurred at that moment, if he hadn't been doing something a little bit hard a little before that. Circumstantially, you would have to say that the heart attack occurred at that moment because he had just been doing something, in my opinion, wouldn't be real strenuous, but you had that bad of underlying heart trouble, that amount of activity to make it occur at that moment.

> \* \* \* \* \* \*

> A. I would have to say in reasonable medical probability, that is what set it off. If he would have been at home just sitting down watching TV, it probably wouldn't have occurred at that time.

█ There was absolutely no testimony from Dr. Woodson or any other witnesses that appellant's heart attack did not occur in the course of his employment. However, in his deposition, Dr. Woodson did testify that, because of the badly deteriorated condition of appellant's cardiovascular system, appellant's heart attack could have occurred at any time, including while appellant might be walking, watching tele-

vision, going to the refrigerator or sleeping. However, that type of testimony does not negate Dr. Woodson's positive testimony that appellant's physical activity on the job actually produced or precipitated appellant's heart attack while appellant was in the course of his employment.

█ A heart attack caused by strain or overexertion may constitute an accidental injury to the physical structure of the body within the meaning of the Worker's Compensation Act. *Henderson v. Travelers Insurance Co.*, 544 S.W.2d 649 (Tex. 1976); *Baird v. Texas Employers' Insurance Co.*, 495 S.W.2d 207 (Tex.1973). In heart attack cases, such as the instant case, there are two issues which must be resolved: First, it must be determined whether there is evidence of an undesigned, untoward event involving overexertion or strain which is traceable to a definite time, place and cause. *Olson v. Hartford Accident & Indemnity Co.*, 477 S.W.2d 859 (Tex.1972); *Cavazos v. Fidelity & Casualty Co. of New York*, 590 S.W.2d 173 (Tex.Civ.App.—Corpus Christi 1979, no writ). If so, it then must be determined whether there is any evidence of whether such strain or overexertion was a producing cause of claimant's stroke. *Henderson v. Traveler's Insurance Co.*, 544 S.W.2d 649 (Tex.1976); *Cavazos v. Fidelity & Casualty Co. of New York*, 590 S.W.2d at p. 175.

█ The question of causation in heart attack cases is usually close, and the evidence is most often largely circumstantial or based on answers of medical witnesses to hypothetical questions. *Baird v. Texas Employer's Insurance Co.*, 495 S.W.2d 207 (Tex.1973); *Mueller v. Charter Oak Fire Insurance Co.*, 533 S.W.2d 123 (Tex.Civ. App.—Tyler 1976, writ ref'd. n.r.e.); *Cavazos v. Fidelity & Casualty Co. of New York*, 590 S.W.2d at p. 175. A pre-existing condition, such as diseased arteries, will not preclude compensation. *Mueller v. Charter Oak Fire Insurance Co.*, 533 S.W.2d at p. 125; *O'Dell v. Home Indemnity Co.*, 449 S.W.2d 485 (Tex.Civ.App.—

**630**

Amarillo 1969, writ ref'd. n.r.e.). Since preexisting heart disease is usually present in heart attack cases, it is important that the job-related strain be the sole or contributing cause of the injury. *Mueller v. Charter Oak Fire Insurance Co.*, 533 S.W.2d at p. 125, citing Symposium of Workmen's Compensation: A Pandect of the Texas Law, 6 St. Mary's L.J. 608.

In the instant case, we hold that Dr. Woodson's testimony that appellant, in his severe atherosclerotic condition, could have sustained the heart attack at any time, regardless of what he was doing, is sufficient to overcome appellant's no evidence point. Appellant's first point of error is overruled.

■ However, in reviewing all of the evidence, the evidence overwhelmingly established that appellant's activity in disposing of the old cable involved overexertion or strain, which occurred during the course of appellant's employment and produced or precipitated appellant's heart attack. We, therefore, hold that the jury finding that appellant's heart attack did not occur while in the course of his employment is against the great weight and preponderance of the evidence so as to be manifestly wrong. *See Kiel v. Texas Employers' Insurance Association*, 679 S.W.2d 656, No. 01–83–00855–CV (Tex.App.—Houston [1st Dist.], no writ); *Traders & General Insurance Company v. McDaniel*, 305 S.W.2d 659 (Tex.Civ.App.—Beaumont 1957, no writ). Appellant's second point of error is sustained.

Due to the conditional submission of the issues, we must REVERSE the judgment and REMAND the cause to the trial court.

GONZALEZ, J., not participating.