## BROTHERHOOD'S RELIEF AND COMPENSATION FUND, Appellant,

v.

## Anthony CAWTHORN, Appellee.

### No. 08–90–00358–CV.

Court of Appeals of Texas, El Paso.

July 3, 1991.

Rehearing overruled July 31, 1991.

S. Anthony Safi, Grambling & Mounce, El Paso, for appellant.

Thomas A. Spieczny, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

This is an appeal from a judgment awarding benefits to an employee under a job protection plan after he was fired from his employment for violating company work rules. We reverse and render.

In May 1986, Anthony Cawthorn was a dues paying member of the Brotherhood's Relief and Compensation Fund, an organization composed of members of the Railroad Brotherhood or Union. The object of the organization was to provide benefits for its members for "Held Out of Service" or "Retirement". The term "Held Out of Service" is defined in the Brotherhood's Constitution to include all cases where an employee has been relieved by his employer from the performance of his usual duties as discipline for an offense. But, an exception is provided in cases of willful or intentional violation or infraction of any orders, rules or regulations of the employer or infraction of any federal or state law.

The Appellee was fired after a hearing at which it was determined that on May 10, 1986, he had violated company rules by running his train as engineer at an excessive speed. His claim was filed with the Compensation Fund in August 1986, and on September 2, 1986, a letter was sent to Mr. Cawthorn advising him that his claim was denied under the provisions of Article XII, Section 4 of the Brotherhood's Constitution. That section excludes payments for claims arising out of a willful or intentional violation or infraction of any order, rule or regulation of the employer or violation of any federal or state law. The letter to Appellee advised him of his right to appeal to the Board of Directors within thirty days.

This case was tried to a jury and the evidence was conflicting as to an attempted appeal to the Brotherhood's Board of Directors. Mr. Cawthorn testified that he believed he had filed a written appeal, but he could not produce a copy of the appeal. The Brotherhood asserts that no written appeal was ever filed and therefore the Board of Directors never reviewed the decision to deny the claim.

The jury found (1) that the Brotherhood committed a material breach of its constitution when it denied the claim; (2) that the breach was a proximate cause of damage to Cawthorn; (3) that the loss of held out of service benefits was $9,750.00; (4) that Cawthorn filed written notice of appeal within thirty days after the letter denying his claim; (5) that the Brotherhood knew or

should have known there was no reasonable basis to deny the claim; (6) that the denial of the claim was a proximate cause of damages independent of damages resulting from termination of employment; (7) that the Brotherhood's failure to act fairly and in good faith indicated conscious indifference to the rights and welfare of Cawthorn; (8) that the negligence of both parties proximately caused the nonpayment of the claim; (9) that such negligence was 95 percent attributable to the Brotherhood and 5 percent attributable to Cawthorn; (10) that Cawthorn sustained damages of $109,750.00 (which included the amount found in question three and mental anguish of $100,000.00); (11) that such negligence upon the part of the Brotherhood was gross negligence; and (12) that Cawthorn should recover exemplary damages of $100,000.00.

The Appellant asserts in its first point of error that the evidence is legally and factually insufficient to support the finding that Cawthorn filed an appeal of the decision denying his claim and that his failure to appeal bars any recovery by him. The Constitution of the Brotherhood provides in Article XXX for "Appeals". First, it provides that any member aggrieved by the decision of the tribunal authorized to hear and determine his case for benefits shall pursue the procedure and exhaust the remedies of hearing and appeal "as herein provided". Second, it provides that the decision upon claims "shall be final, binding and conclusive, unless appealed to the Board of Directors, by filing with the International President a written notice of such appeal, within thirty (30) days after receipt of notice by mail of the decision therein." Finally, it provides that the decision of the Board of Directors "shall be final, binding and conclusive unless a notice of intention to institute legal proceedings ... be given to the Organization at the Principal Office by registered mail within one hundred (100) days after receipt of notice by mail of the decision of the Board of Directors" and the filing of suit within 150 days after receipt of the notice and otherwise "the decision of the Board of Directors on appeal shall be final, binding and conclusive. . . ."

With regard to perfecting an appeal, the testimony from Mr. Cawthorn was as follows:

Q (BY MR. SPIECZNY) Mr. Cawthorn, you were denied your claim and there's a reference in here that they're denying it based on Article XII, Section 4. Do you see that?

A Yes.

Q I want to ask you something else about this. It also says when they denied it that you did have an opportunity to seek redress by trying to submit an appeal. Did you do anything about that?

A Yes, I believe I did submit a written appeal.

Q You're aware of the fact, are you not, that the defendant here takes the position that you didn't send one in?

A Yes.

Q Do you have any physical evidence, any piece of paper, that shows that you did?

A No, I do not. I did not make a copy of that written appeal.

.    .    .    .    .

Q And that letter has already been introduced as evidence. You were informed in that letter that you could appeal that decision, correct?

A Yes.

Q You could appeal that decision to the Board of Directors, correct?

A Yes.

Q And you were informed that the appeal had to be in writing?

A Yes.

Q And that the appeal had to be over your signature, correct?

A Yes.

Q And it had to be within thirty days?

A Yes.

Q There is no proof that you ever appealed the decision of Mr. Myers, correct?

A Correct.

Richard Myers, the Brotherhood President, testified the Fund never received an appeal from Mr. Cawthorn. He substantiated his testimony by producing the entire

claim file which contained nothing relating to the appeal. He testified that every contact with Mr. Cawthorn relating to his claim would have been in that file.

■ Even if we disregard the testimony of Mr. Myers and fully accept the testimony of Mr. Cawthorn, there is no evidence to establish that the claim *was filed within thirty days* as required by the Constitution of the Brotherhood. Certainly, it is reasonable to require both that a notice of appeal be filed and that it be filed within a specific reasonable time. That has always been a requirement in this state in order to appeal from an award of the Industrial Accident Board. See Tex.Rev.Civ.Stat.Ann. art. 8307, § 5 (repealed 1989, effective January 1, 1991). There is no evidence to support the jury finding that Mr. Cawthorn filed a written notice of appeal *within thirty days* after the September 2, 1986 letter which denied his claim.

Having reached that decision, we now turn to the question of the effect of the failure to comply with the constitutional requirements before filing suit. We note that nothing in the constitutional provisions prohibit any suit; in fact, they provide that a suit may be filed, but that procedure is available to members only after a decision by the Board of Directors to whom an appeal is taken by a member who is dissatisfied with the initial claim decision. All parties agree that there has never been a decision by the Board of Directors in this case.

In *Grand International Brotherhood of Locomotive Engineers v. Marshall*, 119 S.W.2d 908 (Tex.Civ.App.—Waco 1938, writ ref'd), a dispute arose over seniority rights to operate certain trains in east Texas. Those rights were controlled by the Brotherhood of Locomotive Engineers. After a decision by the Grand Chief Engineer, Marshall and Strong applied to the President of the Brotherhood for a rehearing but sought relief in the courts before a rehearing could be concluded. After the issuance of an injunction, the Brotherhood appealed and the injunction was dissolved. In the opinion by Justice Alexander, the Court said:

It is undisputed that the plaintiffs are members of and subscribers to the constitution and by-laws of said brotherhood and that whatever seniority rights they enjoy emanate from said brotherhood and are secured to them exclusively by virtue of their membership therein and not by virtue of any contract between them and any of the various railway companies mentioned. The various railway employees here involved, by joining the brotherhood and accepting the benefits thereof, thereby subjected themselves to all reasonable rules and regulations of the brotherhood as to matters within the jurisdiction thereof, and are bound by its decisions therein so long as such decisions are in accordance with the rules thereof, and not otherwise illegal.

119 S.W.2d at 910. The Court held:

Having thus failed to exhaust their remedies within the brotherhood, they were not entitled to resort to the courts for relief.

*Id.* at 911.

The decision in the *Marshall* case was followed the following year in a similar case which involved seniority rights to man a train which provided freight service between Galveston and Houston. The opinion quotes from the *Marshall* decision that "where provision is made in its constitution and by-laws for review within the society, or [sic] the ruling and judgments of its officers of inferior lodges, such remedies must be exhausted before relief may be sought in a court." *Brotherhood of Railroad Trainmen v. Price*, 126 S.W.2d 74, 77 (Tex.Civ.App.—Galveston 1939, writ ref'd).

Following a second trial and second appeal, Justice Alexander again noted in the *Marshall* case that the appellees, by becoming members of the association and accepting its benefits, impliedly bound themselves to abide by its decisions in the determination of disputes arising within the society and were bound to exhaust the remedies provided for therein before resorting to the courts for relief. *Grand International Brotherhood of Locomotive Engineers v. Marshall*, 146 S.W.2d 411 (Tex. Civ.App.—Waco 1940, writ ref'd). Thus,

we find within a period of the three years, three writ refused cases saying the rules of the organization as to internal appeals must be followed before there can be a resort to the courts. Point of Error No. One is sustained.

The Appellant next contends that the trial court erred in applying the bad faith tort theory in this case. We agree. Without a timely appeal to the Board of Directors, the Appellee was bound by the initial claims decision which denied his claim and he had no right at that stage of the proceedings to seek legal redress in the courts. Had he exhausted his right to appeal to the Board of Directors, they may have sustained his claim, they may have denied his claim, but the rules by which he was bound to play required that he present that initial claims decision to the Board of Directors before seeking relief in the courts. If a claimant can seek damages for the bad faith handling of his claim after the initial determination, he has effectively avoided the provisions of the constitution by which he is bound. To sustain the first point of error concerning the necessity to exhaust organizational appeal procedures and not sustain the second point with regard to a bad faith claim would place the Court in a very contradictory and foolish position.

■ Even if we disregard the procedural aspect of the case, we cannot say that there was no reasonable basis for denying the claim. The reviewing officer had before him the findings of the trainmaster, who after a full hearing involving testimony from all of the witnesses, recommended that Mr. Cawthorn be dismissed from his service with the Southern Pacific Transportation Company. The reviewing officer had a copy of the testimony of those witnesses which he could review to see if it supported the recommendation which was made to Mr. Cawthorn's employer. He knew the railroad graphs confirmed the conductor's testimony as to the speed of the train on the trip in question. To establish a cause of action, the claimant must prove there was no reasonable basis for denial of the claim. *Arnold v. National County Mutual Fire Insurance Compa-*

*ny,* 725 S.W.2d 165 (Tex.1987). That was not done in this case. The evidence shows conclusively that there was a reasonable basis (intentionally operating the train in excess of sixty-five miles per hour after numerous requests to reduce the speed) for denying the claim. In this regard, the evidence before the reviewing officer was not required to establish the excessive speed as a matter of law but only present a reasonable basis for the decision that was made. Certainly it did that. Point of Error No. Two is sustained.

■ The Appellant next contends the trial court erred in applying a negligence theory to this case involving contractual rights between the Brotherhood and one of its members. In *Arnold v. National County Mutual Fire Insurance Company,* 725 S.W.2d 165 (Tex.1987), the Court applied a duty of good faith and fair dealing in a suit on a contract. A cause of action is established when it is proved that there was no reasonable basis for denial of the claim. Although the breach of such duty is a tort, it is not one that flows from the failure to exercise ordinary care and is characterized as being negligent. The duty of good faith and fair dealings in a breach of contract case was recognized in the *Arnold* case. The Court never once used the term negligence. It said the breach occurred when there was no reasonable basis for denial of a claim or delay in payment. But strangely enough, the Court relied upon *G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved) which recognized a cause of action against a carrier for its negligence if failing to settle a claim. Again, in *Chitsey v. National Lloyd's Insurance Company,* 698 S.W.2d 766, 769 (Tex.App.—Austin, 1985), *aff'd,* 738 S.W.2d 641 (Tex.1987), the Court does not indicate that breach of contract or breach of the duty of good faith and fair dealing have any connection to negligence. In fact, the opinion by the Court of Appeals sets forth three theories of recovery, none of which deal with negligence.

In *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988),

the Court sets forth two elements for recovery, neither of which concern a failure to exercise ordinary care. Justice Spears in the *Aranda* opinion sets forth in his summary four specific elements necessary to recover damages based upon the cause of action for a breach of the duty of good faith and fair dealing. 748 S.W.2d at 215. The Court cites the holding in *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947) which recognized a negligence cause of action arising out of a contract to perform certain tasks. But, the negligence in that case was from the work being performed and not from some decision as to whether work was required under the terms of the contract. The *Aranda* case also relies upon this Court's holding in *Burroughs v. Bunch*, 210 S.W.2d 211 (Tex. Civ.App.—El Paso 1948, writ ref'd) for the statement that "[t]he same duty of care and faithfulness that arises under common law contracts applies equally to insurance contracts." In the *Burroughs* case, Chief Justice Price made it clear that "this is not an action on a contract of insurance." 210 S.W.2d at 214–15. That case involved the negligent failure to obtain a builder's risk policy which was later destroyed by fire. Finally, the opinion in *Viles v. Security National Insurance Company*, 788 S.W.2d 566 (Tex.1990) makes no mention of any cause of action for negligence arising out of a breach of contract case. Had the Brotherhood concluded to pay this claim and then paid benefits at a reduced rate, that conduct might give rise to a cause of action for negligence. But, the decision to pay or deny the claim does not involve negligence but only the good faith and fair dealing issue. To hold otherwise is to fracture one claim into sub-issues and begin a trend toward multiple jury questions for the same cause of action.

If we misinterpret what the Supreme Court has said, we nevertheless hold that as a matter of law there is no evidence of negligence. There is no proof that the decision to deny this claim resulted from a failure to exercise ordinary care. All of the materials submitted in connection with the claim were duly considered, nothing was discarded. The evidence justified the decision that Mr. Cawthorn's employment was terminated because he willfully or intentionally violated company rules. Point of Error No. Three is sustained.

Having sustained each of the points of error which related to the issues of liability, the points of error which are concerned with issues of damages are moot.

The judgment of the trial court is reversed and judgment is rendered for the Appellant.