**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**Bessie CROWE, Individually and as Next Friend of John Louis Crowe, Appellees.**

**No. A14–92–01270–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 27, 1993.

Opinion Overruling Motion for Rehearing June 24, 1993.

See also 808 S.W.2d 573.

Jeffery Lee Hoffman, Cynthia Keely Timms, Houston, for appellant.

Robert B. Langston, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is a bad faith insurance case. Appellees, Bessie Crowe and her minor son, John Louis, filed this suit alleging that appellant, Nationwide Mutual Insurance Company (Nationwide) was negligent and breached its duty of good faith and fair dealing in failing to pay workers compensation death benefits. A jury found in favor of appellees and awarded each appellee $10,000.00 in actual damages. The jury also found that Nationwide acted with conscious indifference to the rights of appellees and awarded each appellee $500,000.00 in punitive damages. Nationwide appeals, raising nine points of error. We affirm.

John Wayne Crowe worked as a plumber for Chaparral Plumbing. On October 22, 1988, Mr. Crowe suffered a heart attack while installing a water heater at a job site. He was taken to Spring Branch Hospital where he underwent emergency heart surgery and died that day. Mr. Crowe was survived by his wife, Bessie, and his son, John Louis. Nationwide's adjustor, Deborah Tanksley, learned of Mr. Crowe's death on October 25, 1988, when she contacted the policy holder, Chaparral. Nationwide received the Employer's First Report of Injury or Illness (E–1) no later than October 31, 1988. On January 12, 1989, seventy-three days after receiving the E–1, Nationwide formally denied appellees' claim for workers compensation death benefits. Nationwide's denial was based solely on Mr. Crowe's death certificate. The notice of controversion stated that there was no evidence that Mr. Crowe's death was in the course of his employment and that Nationwide was continuing its investigation.

In its first point of error, Nationwide contends there is no evidence to support the submission of jury question two regarding proximate cause. Nationwide's point of error is moot and not a proper subject for appeal because no judgment was rendered on the jury's answer to question two. Jury questions one and two asked whether Nationwide was negligent in timely failing to either pay benefits or controvert the claim and whether that negligence proximately caused appellees' mental anguish. See TEX.REV.CIV.STAT.ANN. art. 8306 § 18a(a) (Vernon Supp.1990), *repealed by* Act of January 1, 1991, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1991 Tex. Gen.Laws 1, 114. The jury found in favor of appellees on both questions. In their Motion To Disregard Certain Findings On Jury Questions & Amended Motion For Judgment On The Verdict, appellees re-

quested the trial court to disregard the jury's answers to questions one and two and to enter judgment on the jury's findings with respect to the breach of good faith and fair dealing. The trial court's final judgment recites that appellees' motion was granted and awards recovery to appellees only on the bad faith and exemplary damages findings in questions three, four, five, six, and eight. Thus, Nationwide's complaint about question two does not support grounds for reversal of the judgment. *See Ponton v. Munro,* 818 S.W.2d 865, 867 (Tex.App.—Corpus Christi 1991, no writ). We overrule point of error one.

In its second point of error, Nationwide contends that the trial court erred in overruling its motion for directed verdict because there was no breach of the duty of good faith and fair dealing as a matter of law. Texas law recognizes the duty of an insurer to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. Nat'l County Mutual Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). That duty applies in the workers compensation context. *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210, 212–13 (Tex.1988). A workers compensation claimant who asserts that a carrier has breached the duty of good faith and fair dealing by refusing to pay or delaying payment of a claim must establish: (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy, or in other words, that a reasonable insurer under similar circumstances would not have delayed or denied the claimant's benefits, *and* (2) that the carrier actually knew, or based on its duty to investigate, should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *See Id.* at 213 (emphasis in original). A carrier maintains the right to deny invalid or questionable claims

and is not subject to liability for an erroneous denial of a claim. *Id.* Whether there is a reasonable basis for denial is judged by the facts before the insurer at the time the claim is denied. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990).

Nationwide first contends that the Industrial Accident Board's (IAB) denial of appellees' claim based on the hearing examiner's finding that Mr. Crowe's death was not in the course of employment conclusively establishes that Nationwide's denial was reasonable. In support of its contention, Nationwide points out that the trial court "expressly found" in admitting the Award of the Board that the information presented to the IAB was "virtually identical" to the information upon which Nationwide based its denial. While the trial court stated that the hearing examiner's files and Nationwide's files were "substantially identical" as of the time of the denial, it also stated that the hearing examiner's findings as contained in the Award of the Board was only "some evidence" of whether the denial was reasonable. There is nothing in the record to reflect what was contained in the IAB's file or what the hearing examiner considered in denying appellees' claim. In the absence of such evidence, we cannot say that the trial court incorrectly concluded that the IAB's findings were not conclusive. Moreover, the hearing examiner's determination was made post-denial and, thus, its probative value, if any, was limited. *See Id.*

Nationwide also contends that the death certificate was a reasonable basis for denying appellees' claim as a matter of law. A dispute about whether there was any reasonable basis to support the denial of a claim is an issue for the jury. *See State Farm Lloyds v. Polasek,* 847 S.W.2d 279, 284 (Tex.App.—San Antonio 1992, n.w.h.)[1]; *see also Nat'l Union Fire Ins. v.*

---

1. In *Polasek,* the plaintiffs sued to recover proceeds under an insurance policy when their video rental business was destroyed by fire. The insurance company denied the claim because there was undisputed evidence that the fire was caused by arson. At trial, the issue was whether plaintiffs, or someone else, committed arson and whether the insurance company denied the claim in bad faith. The San Antonio Court of Appeals upheld the plaintiffs' recovery under the insurance contract, finding sufficient evidence that the plaintiffs did not set the fire. 847 S.W.2d at 283. The court, however, reversed the plaintiffs' recovery under their bad

649

*Dominguez,* 793 S.W.2d 66, 70 (Tex.App.— El Paso 1990, writ granted). Here, there is conflicting evidence about whether the death certificate alone was a reasonable basis for denying appellees' claim. The death certificate listed the *immediate* cause of death as: (1) cardiogenic shock due to, or as a consequence of, (2) massive myocardial infarction due to, or as a consequence of, (3) severe coronary artery disease. Nationwide's own district claims manager, Steven Dansevich, testified that it was not proper procedure in most cases to deny a claim solely on the basis of information in a death certificate. Appellees' experts testified that the death certificate standing alone was not a reasonable basis for denying the claim. Nationwide's expert and Ms. Tanksley's supervisor both testified to the contrary. Nationwide points out that the death certificate did not specify whether Mr. Crowe suffered an "injury at work" even though there was a space provided for such a designation. Nationwide contends that the omission meant that Mr. Crowe's treating physicians determined that his death was not work-related. Even if the death certificate had specified an "injury at work," it would not have shed additional light on facts already known to Ms. Tanksley or on the critical issue of whether Mr. Crowe's on-the-job activities might have been a contributing cause of his death. That determination required at least some investigation. At the time of

denial, Ms. Tanksley knew that: (1) Mr. Crowe suffered a heart attack on the job while installing a water heater in an attic; (2) he left a wife and a young child; (3) he was taken to Spring Branch Hospital where he died after emergency surgery; (4) Dr. Levine and Dr. Mandviwala were treating physicians; and (5) there were two friends or relatives, Oscar Calhoun and Haddie Smith, who witnessed the incident. Ms. Tanksley did not investigate any of these facts or sources of information. A directed verdict is improper if there is any evidence of probative value which raises a material fact issue. *Qantel Business Sys. v. Custom Controls,* 761 S.W.2d 302, 303 (Tex. 1988). There was more than enough evidence to support submission of the bad faith issue to the jury and the trial court properly overruled Nationwide's motion for directed verdict. We overrule point of error two.

■■■ In its third, fourth, and fifth points of error, Nationwide contends that the evidence is legally and factually insufficient to support the jury's finding that Nationwide acted with conscious indifference. Exemplary damages are recoverable against an insurance company for a breach of its duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions. *Arnold,* 725 S.W.2d 168 (*citing Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983)).

faith cause of action, finding as a matter of law that the undisputed evidence of arson was a reasonable basis for denying the claim. *Id.* at 288. In so holding, the court reviewed authorities that have applied the legal sufficiency test to a bad faith finding. The court noted the cases that have relieved insurers from bad faith claims where a "bona fide controversy existed" and concluded that a plaintiff must show that there is no reasonable basis for denying a claim rather than "some evidence" of unreasonableness. *Id.* at 285–86. The court explained:

We recognize that under *Aranda* and *Arnold* the basis for denying the claim must be reasonable. But this does not authorize the trier of fact to second guess the insurer about reasonableness. And it does not authorize the trier [sic] to decide whether the insurer acted reasonably. It means that the basis for denying or delaying payment must have some substance to it; it cannot be fanciful or flimsy. Not just any asserted basis will suffice.

*Id.* 847 S.W.2d at 287.

As we have noted, *Aranda* specifically states that the first element of the test requires an "*objective* determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." 748 S.W.2d at 213 (emphasis added). We disapprove of the San Antonio court's holding to the extent that it implies that anything less than an *objectively* reasonable basis is required to deny a claim. Moreover, an "on-the-job" heart attack case in the context of workers compensation presents a far different situation than a case involving the intentional act of arson. In the former case, there is almost always going to be a "bona fide controversy" because a pre-existing heart disease is usually present. *See Blair v. INA of Texas,* 686 S.W.2d 627, 629 (Tex.App.— Corpus Christi 1985, writ ref'd n.r.e.). Such a pre-existing condition will not preclude compensation. *Id.* Hence, there is the need for investigation before denying such claims.

A breach of the duty of good faith and fair dealing in itself is insufficient to support a finding of exemplary damages. *Nat'l Fire Ins. v. Valero Energy Corp.*, 777 S.W.2d 501, 511 (Tex.App.—Corpus Christi 1989; writ denied). To award exemplary damages, the jury must find that the insurance company acted with conscious indifference. *Aetna Casualty and Sur. Co. v. Joseph*, 769 S.W.2d 603, 607 (Tex.App.—Dallas 1989, no writ). That is, the jury must find that the insurance company acted with "that entire want of care which would raise a belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person affected by it." *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981). In reviewing the jury's finding, we must use the same standard of review applicable to other fact issues. *See State Farm Mutual Ins. Co. v. Zubiate*, 808 S.W.2d 590, 599 (Tex.App.—El Paso 1991, writ denied).

■ When both legal and factual sufficiency points are raised we must first examine the legal sufficiency. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In reviewing a "no evidence point," we are to consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). If there is any evidence of probative value to support the jury's findings, we must uphold the findings and overrule the points of error. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If the findings are supported by legally sufficient evidence, we must then weigh and consider all the evidence, both in support of, and contrary to, the challenged findings. *Id.* The jury's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). We may not substitute our judgment for that of the jury simply because we may disagree with the jury's findings. *Herbert v. Herbert*, 754 S.W.2d 141, 142 (Tex.1988).

■ Nationwide contends that it made some effort at investigation based on faulty information received from Mr. Crowe's employer and appellees' attorney. Nationwide notes that while that investigation might have been more thorough and timely, it does not establish conscious indifference. This is not a case of "failure to pursue every lead." *See Polasek*, 847 S.W.2d 288. Here, there was little, if any, attempt at investigation by Nationwide. Ms. Tanksley twice attempted to contact Mrs. Crowe shortly after her husband's death. Three days after Mr. Crowe's death, Ms. Tanksley dictated a letter to be sent to Mrs. Crowe at the address listed on the E-1. Although that address was incorrect, the letter was not dated until approximately one month later. Five days after Mr. Crowe's death, Ms. Tanksley attempted to contact Mrs. Crowe by telephone. She called Mrs. Crowe's aunt from the number correctly listed on the E-1 and left a message. When Mrs. Crowe returned the call from a pay phone, Ms. Tanksley told her that she was too busy and that she would call back. When Ms. Tanksley did not call back after several minutes, Mrs. Crowe left. No such call from Mrs. Crowe is noted in Ms. Tanksley's log even though she testified such a call would have been documented. In any event, Ms. Tanksley made no further effort to contact Mrs. Crowe. She testified that this was because Mrs. Crowe was represented by counsel. Mrs. Crowe, however, did not obtain the services of an attorney until mid-December. Also, Ms. Tanksley did not take any action on appellees' claim during the entire month of November. In early December, Ms. Tanksley obtained the addresses of witnesses from the employer. It is not clear from the record whether this information differed from information on the E-1. Her log notes reflect that when she finally dictated a letter to one witness, Mr. Calhoun, she had already decided to deny the claim. That letter was also returned because of an incorrect address. Ms. Tanksley did not further attempt to contact any witnesses.

Ms. Tanksley also never attempted to obtain medical records or contact the hospital correctly identified on the E-1. Yet, it

is undisputed that medical records were the most important piece of information for determining the compensability of claims and that acquisition of medical records was standard practice in adjusting claims. Nationwide presented evidence from the custodian of records for Spring Branch Hospital that an authorization from the patient or executor of the estate is required to obtain medical records. However, the custodian testified that the hospital releases medical records if an E–1 is filed with the business office. At any rate, Ms. Tanksley did not attempt to obtain an authorization or file an E–1.

In late December, appellees' attorney, Glenn Devlin, sent several documents to Ms. Tanksley, including a Letter of Representation, Notice of Claim, Statement of Beneficiary, and Mr. Crowe's death certificate. The Statement of Beneficiary for the first time described that Mr. Crowe was taken ill while "straining to lift a hot water heater up into an attic" and named one of Mr. Crowe's treating physicians, Dr. Levine. The death certificate was signed by another treating physician, Dr. Minhas S. Mandviwala. Ms. Tanksley did not obtain a report from Dr. Levine, Dr. Mandviwala or any other treating physician even though it was conceded by Nationwide's own employees that additional medical reports were necessary. Ms. Tanksley had handled more than 1,000 claims. Yet, Ms. Tanksley testified by deposition that it never occurred to her to get a medical opinion and never occurred to her that an "injury" includes "aggravation of a pre-existing condition." That testimony contradicts in part evidence at trial that Ms. Tanksley attempted to contact a "rehab" nurse on the day she decided to deny the claim regarding referral of the file to a doctor.

On January 11, 1989, Ms. Tanksley made up her mind to deny the claim based solely on the death certificate. Her log entry for that day states: "based on # 2 and 3 may have something to go on as far as controverting." The notice of controversion was filed with the IAB on January 12, 1989, seventy-three days after Nationwide received the notice of injury. It is undisputed that at the time of the denial, Nation-

wide violated the twenty-day rule of former article 8306, § 18a. Ms. Tanksley admitted not only that she violated the twenty-day rule in this case but may have violated it in other cases. Tom Stanley, an experienced workers compensation attorney, testified that under workers compensation law, Nationwide could have initiated payment of the claim within twenty days and later discontinued payments if it discovered that the injury was not compensable. According to Mr. Stanley, Nationwide caused harm to appellees by depriving them of income for fifty-three days. Both Mr. Stanley and Mr. Dansevich testified that a reasonable insurer would have adequately investigated this claim by the end of seventy-three days. George Black, a claims consultant with twenty-five years' experience, testified that the delay in this case was "protracted" and "illegal."

Nationwide asserts that there is no evidence that its actions were intentionally wrongful or motivated by ill will and a desire to injure appellees. *See Auto Ins. Co. of Hartford. v. Davila*, 805 S.W.2d 897, 909 (Tex.App.—Corpus Christi 1991, writ denied). Ms. Tanksley testified that she was not aware that appellees would become destitute by her actions. She also testified that she did not intend to cheat Mrs. Crowe out of benefits or to make it difficult for her to obtain benefits. Yet, despite evidence that she violated the law and did not follow proper procedure for adjusting claims, Ms. Tanksley denied that she made any mistakes in handling appellees' claim and stated she would not do anything differently. Glenn Devlin also testified that Ms. Tanksley told him before denying the claim that Nationwide was not going to pay the claim but was going to give Mrs. Crowe "maximum litigation." Indeed, Ms. Tanksley's log notes for October 25, 1989, reflect that she initially set reserves at "$1,000.00 comp and $3,000.00 medical." According to expert testimony, the reserves reflected the estimated value of the claim. Mr. Black testified that the reserves in this case were not reasonably set and concluded that the adjustor thought the claim was "worthless." Mr. Stanley

testified that the reserves reflected that Nationwide did not initially view the claim as compensable. Stanley emphasized, however, that the log notes stated that there was insufficient information to set reserves and that the reserves would be adjusted accordingly. There is no evidence that the reserves were ever adjusted. In addition, this is the third trial for Mrs. Crowe. Mr. Stanley testified that Nationwide's conduct represented a conscious disregard for the Crowe family's well-being. Mr. Black testified that a reasonable insurance company would have determined the hardship placed on the family in a death case and that Nationwide's failure to do so in this case showed its conscious indifference to the rights of Mrs. Crowe and her son. The jury could reasonably have concluded that Nationwide simply never intended to pay appellees' claim and acted with an entire want of care. Having thoroughly reviewed the record, we find sufficient evidence to support the jury's finding that Nationwide acted with conscious indifference to the rights and welfare of appellees. We overrule points of error three, four, and five.

 In its sixth and seventh points of error, Nationwide contends that the jury's award of exemplary damages to each appellee is unsupported by the evidence and excessive. An award of punitive damages rests upon the jury's discretion and will not be set aside as excessive unless the amount is so large as to indicate that it is the result of passion and prejudice, or that the evidence was disregarded. *Aetna Casualty and Sur. Co. v. Joseph,* 769 S.W.2d 603, 607 (Tex.App.—Dallas 1989, no writ). To determine whether an award of exemplary damages is reasonable, we must consider the following factors:

(1) the nature of the wrong;

(2) the character of the conduct involved;

(3) the degree of culpability of the wrongdoer;

(4) the situation and sensibilities of the party concerned;

(5) the extent to which conduct offends a public sense of justice and propriety;

(6) the frequency of the wrongs committed; and

(7) the size of the award needed to deter similar wrongs in the future.

*Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981); *Zubiate,* 808 S.W.2d at 604.

 These factors were included in the instructions to the jury. The jury was also instructed that it could award exemplary damages against Nationwide "as punishment and as a warning and example to others situated like it, from committing like offenses and wrongs in the future." Both parties have provided us with an extensive analysis of the *Alamo* factors as they apply to the facts of this case. In particular, they focus on the size of the award. The jury heard evidence of Nationwide's net worth and net profits for the preceding year. The jury also heard evidence regarding the relative impact of various punitive damage awards. The size of the award, while constituting only 3/100 of 1% of Nationwide's net worth, comprised a ratio of exemplary to actual damages of 50:1. As such, Nationwide contends that the award violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In *Haslip,* the Supreme Court reviewed whether certain procedural safeguards and substantive standards imposed by Alabama common law adequately limited jury discretion in assessing punitive damages for purposes of the Due Process Clause. 499 U.S. at ——, 111 S.Ct. at 1044–45. Neither *Haslip* nor Texas law provides that an award comprising a certain ratio of punitive to actual damages is *per se* excessive and unconstitutional. *See Joseph,* 769 S.W.2d at 607. Texas procedure for awarding punitive damages comports with the common law method approved in *Haslip. Gen. Motors Corp. v. Saenz,* 829 S.W.2d 230, 241 (Tex.App.—Corpus Christi 1991, writ granted). That procedure, as outlined in *Saenz,* was followed in the instant case. *See Id.; see also Texas Employer's Ins. Ass'n v. Puckett,* 822 S.W.2d 133, 142 (Tex.App.—Houston [1st Dist.] 1991, writ denied). We find that the jury's award of exemplary damages

does not violate Nationwide's due process rights. Guided by the *Alamo* factors, we also conclude that the award was not excessive or unjust. We overrule points of error six and seven.

■ In its eighth point of error, Nationwide contends that the jury's award of exemplary damages is excessive as a matter of law. Nationwide asserts that section 41.007 of the Civil Practice and Remedies Code limits the amount of exemplary damages that can be awarded in a bad faith suit. That section states in pertinent part that "exemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000.00, whichever is greater." TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp. 1993). Nationwide presented this argument to the trial court in its Motion for New Trial, Remittitur, or for Reformation of the Judgment and, thus, preserved error for review.

Nonetheless, Nationwide's argument is unconvincing. Nationwide acknowledges that chapter 41 regarding exemplary damages applies only to "negligence, strict liability, and breach of warranty" actions. *See* Act of September 1, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, 1987 Tex.Gen.Laws 37, 44–46 (current version at TEX.CIV.PRAC. & REM.CODE ANN. §§ 41.002(a), 33.001 (Vernon Supp.1993)). Citing certain language from *Arnold* and *Aranda*, Nationwide argues that the duty of good faith and fair dealing arose historically from common law negligence cases and that the standard of care for breach of that duty is a negligence standard of reasonableness. Because a bad faith claim is "really" a negligence suit and because chapter 41 does not specifically exclude bad faith causes of action, Nationwide reasons that the cap on exemplary damages in chapter 41 applies. *Id.* at § 41.002(b). Nationwide's argument that "bad faith" is an action in negligence has been squarely rejected in *Brotherhood's Relief and Compensation Fund v. Cawthorn*, 815 S.W.2d 254 (Tex.App.—El Paso 1991, writ denied). There, an employee sued his job protection plan for refusing to pay benefits when he was fired for violat-

ing company work rules. In reversing a judgment awarding benefits, the court held that the trial court erred in "applying a negligence theory to a case involving contractual rights between the Brotherhood and one of its members." 815 S.W.2d at 258–59. In so holding, the court analyzed the recent Texas Supreme Court decisions, including *Arnold* and *Aranda*, and concluded that the decision to deny or pay benefits does not involve negligence, i.e., the failure to exercise ordinary care, but only the issue of good faith and fair dealing. *Id.* We find no fault with the El Paso's court reasoning. Because this is a bad faith case and not a negligence case, chapter 41 is inapplicable. Our conclusion that chapter 41 does not apply is supported by the Legislature's subsequent enactment of a statutory cap on exemplary damages specifically for bad faith causes of action. Act of January 1, 1991, 71st Leg., 2nd C.S., Ch. 1, § 10.42, 1991 Tex.Gen.Laws 1, 78 (current version at TEX.REV.CIV.STAT.ANN. art. 8308–10.42 (Vernon Supp.1993)). We overrule Nationwide's eighth point of error.

In its ninth point of error, Nationwide contends that appellees have no standing to assert a claim for breach of the duty of good faith and fair dealing. Because Nationwide did not challenge appellees' standing in the trial court, it waived error. *Texas Indus. Traffic League v. R.R. Comm'n*, 633 S.W.2d 821, 823 (Tex.1982); *see Integrated Title Data Sys. v. Dulaney*, 800 S.W.2d 336, 339 (Tex.App.—El Paso 1990, no writ); *see also City of Fort Worth v. Groves*, 746 S.W.2d 907, 913 (Tex.App.—Fort Worth 1988, no writ). We overrule point of error nine and, accordingly, affirm the judgment of the trial court.

### OPINION ON REHEARING

■ In our original opinion, we cited TEX.REV.CIV.STAT.ANN. art. 8308–10.42 (Vernon Supp.1993), to show that the Legislature did not intend to apply the cap on punitive damages set forth in chapter 41 of the Civil Practice & Remedies Code to bad faith cases. Although not raised in its brief, on motion for rehearing, Nationwide

contends that article 8308–10.42 should apply to the instant case. Article 8308–10.42 is part of the revamped Texas Worker's Compensation Act (the Act) enacted by the Legislature on January 1, 1991. Act of January 1, 1991, 71st Leg., 2nd C.S., Ch. 1, § 17.18, 1989 Tex.Spec.Laws 1, 122. The change in law made by the Act "applies only to an injury for which the date of injury is on or after the effective date of [the] Act." *Id.* § 17.18(c). Article 8308–10.42 became effective on June 1, 1991. *Id.* § 17.19. Although the trial of this cause was in June 1992, the dates of Mr. Crowe's injury and denial of Mrs. Crowe's claim occurred before the effective date of article 8308–10.42 and therefore, that section is inapplicable.

Nationwide also contends that the Crowes did not have standing to pursue this bad faith case because they were not parties to the "special relationship" created by the contract between employee, employer, and insurance carrier described in *Aranda.* Nationwide points out that its complaint was preserved in its Motion For New Trial, Remittitur or For Reformation of the Judgment. We express doubts about the propriety of raising a lack of standing complaint for the first time on a Motion for New Trial. However, even if error was preserved, we find that Nationwide's argument is without merit. In support of its argument, Nationwide cites *Transportation Ins. Co. v. Archer,* 832 S.W.2d 403 (Tex.App.—Fort Worth 1992, writ denied). In *Archer,* an injured employee *and* his spouse sued the insurance carrier for breach of the duty of good faith and fair dealing in the handling of the employee's worker's compensation claim. 832 S.W.2d at 404. The court held that the spouse had no independent cause of action against the carrier for breach of the duty of good faith and fair dealing in connection with the carrier's handling of her husband's claim. 832 S.W.2d at 405–6.

We agree with the Crowes that *Archer* is distinguishable because it involved an employee who was alive and capable of pursuing his own claim. One must have a legal right which has been breached to have standing to seek redress for an injury. *Develop–Cepts, Inc. v. City of Galveston,* 668 S.W.2d 790, 794 (Tex. App.—Houston [14th Dist.] 1984, no writ). Here, the Crowes are recognized beneficiaries who have a right to claim benefits under worker's compensation law. TEX. REV.CIV.STAT.ANN. art. 8306 § 8(a) (repealed 1991). In attempting to exercise that right, the Crowes alleged that Nationwide did not treat them fairly and acted in bad faith. Hence, we find that the Crowes had standing to bring this action. Accordingly, we overrule Nationwide's motion for rehearing.