**DEVELO-CEPTS, INC., Appellant,**

v.

**CITY OF GALVESTON, Texas, Appellee.**

**No. B14–83–302CV.**

Court of Appeals of Texas, Houston (14th Dist.).

February 16, 1984.

Rehearing Denied March 15, 1984.

Renea Hicks, Austin, for appellant.

Earl Luna, Law Offices of Earl Luna, Dallas, Robert V. Shattuck, City Atty., Galveston, for appellee.

Before ROBERTSON, SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Develo-cepts, Inc., appeals from the trial court's judgment dismissing or abating this case because of Develo-cepts' lack of standing to sue. We affirm.

Develo-cepts, a profit-making Texas corporation interested in providing residential custodial care to mentally retarded persons, wanted to establish a fifteen-bed group home at 2214 Avenue M in Galveston. This location is zoned "R-Retail", and the city zoning ordinance would require a specific use permit for operation of such facility in that area.

Develo-cepts had no contractual or other interest in the property, but had a verbal agreement with a couple, the Wirths, that if they could purchase the property from its owners, the Matthews, Develo-cepts would lease the property from the Wirths. The Wirths made an offer for the property and deposited earnest money, but the Matthews never accepted the offer.

The Matthews signed an application for a special use permit for the property, and Helen Fitzsimmons, the sole stockholder of Develo-cepts, signed the application as the Fitzsimmons' agent. The City of Galveston, in the exercise of its zoning authority, denied the specific use permit.

On September 22, 1980, Develo-cepts brought suit for declaratory judgment, injunctive relief and for damages for alleged lost profits caused by the permit denial.

Subsequently, Texas Department of Human Resources Rule 326.35.03.005, which became effective May 1, 1982, limited certification for participation in the program in which Develo-cepts wished to participate (ICF–MR) to a maximum six-bed facility, and to facilities not located within a three-mile radius of another ICF–MR facility. Develo-cepts proposed a fifteen-bed facility which was located within one mile of another ICF–MR facility.

There is disputed evidence that the Department of Human Resources denied Develo-cepts' certification. On January 11, 1982, Ms. Fitzsimmons received a letter stating that the Department denied certification. On March 3, 1982, however, Develo-cepts' attorney received a letter stating that Develo-cepts would be allowed 120 days after the completion of this litigation "to meet certification requirements."

On October 23, 1980, appellee filed its Original Answer, and then the parties began discovery. On January 20, 1983, appellee filed its Motion for Dismissal or Abatement. After a hearing on this Motion, the trial court dismissed the case.

Appellant brings seven points of error on appeal. Points of error one and two concern appellant's standing to bring this suit. Point of error one claims that by its delay in filing its plea in abatement, appellee waived any claims that appellant lacked standing. Point of error two asserts that the trial court erred in holding that appellant did not have standing. Point of error seven alleges that the trial court erred in dismissing the action rather than allowing appellant to amend its pleadings. We disagree. Because we have determined that appellant did not have standing, that appellee did not waive its objection to appellant's lack of standing and that the trial court did

not err in refusing to allow appellant to amend its pleadings, we need not discuss appellant's other points of error: (3), (5) and (6) that the trial court erred in considering matters not in issue at the hearing on the Motion for Dismissal or Abatement, and (4) that the trial court erred in holding that the case was moot.

A challenge that a party lacks standing is similar to a challenge that a party lacks capacity to sue. Appellee recognized this similarity by filing a verified plea in abatement pursuant to Rule 93(e) in order to challenge appellant's standing.

■ Appellant, however, attempts to equate a challenge that a party lacks standing to a challenge that a party lacks capacity to sue. A party who wishes to contest his opponent's lack of capacity to sue, must do so by a verified plea in abatement. *Bluebonnet Farms v. Gibraltar Savings Ass'n*, 618 S.W.2d 81 (Tex.Civ.App.—Houston [1st Dist.1980], writ ref'd n.r.e.). Such a pleading is dilatory and is susceptible to waiver. *Bluebonnet Farms*, 618 S.W.2d at 83. In *Bluebonnet Farms*, the Court of Civil Appeals determined that in allowing the appellee's plea in abatement four years after it had answered the suit and without any explanation for the delay, the trial court had worked an injustice on the appellant.

■ A challenge that a party lacks standing to sue, however, is not the same thing as a challenge that a party lacks capacity to sue. Lack of capacity can be cured by amended pleadings, and a proper response to a challenge to capacity is to afford the party challenged with an opportunity to amend. In *Bluebonnet Farms*, the corporation which brought suit had forfeited its corporate charter by failing to pay franchise taxes. The corporate entity, no longer existed, and therefore lacked capacity to sue. The shareholders, however, could have amended the pleadings and carried on the litigation.

■ Conversely, the lack of standing in our case could not be cured by amended pleadings. Appellant asserts that given the opportunity to amend its pleadings, it could attempt to obtain an interest in the property. This action would go beyond the procedural steps contemplated by the Texas Rules of Civil Procedure. These rules are designed to aid in the speedy disposition of litigation. *Bluebonnet Farms*, 618 S.W.2d at 84. Even if our case had gone through trial on the merits, one fact would remain true, appellant would not be entitled to relief because it lacks standing to sue. The trial court did not err in refusing to allow appellant to amend its pleadings. While it is true appellee would have waived this challenge if it had not asserted it at the trial level, but had raised it for the first time on appeal, *Texas Industrial Traffic League v. Railroad Commission*, 633 S.W.2d 821 (Tex.1982), courts are allowed to look at the equities of the situation to determine whether a plea in abatement is timely filed. *Bluebonnet Farms*, 618 S.W.2d at 83.

■ In our case, the city filed its plea in abatement two and one-half years after the suit was filed and after it had undertaken substantial discovery. This discovery provided information necessary for appellee to urge its plea in abatement. The plea was filed, however, one month before trial. In our case, the equities balance differently than in *Bluebonnet Farms*. The trial court did not err in allowing appellee to file its plea in abatement so late because regardless of when the plea was filed, appellant could not have cured the defect with amended pleadings. Although at some point a challenge to standing becomes waiveable, appellee did not waive that challenge. We overrule points of error one and seven.

■ Appellant's point of error two alleges that regardless of whether the issue was waived, appellant had standing to sue. Appellant had no contractual or property interest in the property in question.

It is a fundamental rule of law that without a breach of a legal right belonging to the plaintiff, no cause of action arises or can accrue to his benefit... For a person to maintain a court action, he must show that he has a justiciable interest in the subject matter in litigation, either in

his own right or in a representative capacity.... The issue of standing to sue has been the subject of much discussion. As a general rule, ... a person has standing to sue, if: 1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; 2) he has a direct relationship between the alleged injury and claim sought to be adjudicated: 3) he has a personal stake in the controversy; 4) the challenged action has caused the plaintiff some injury in fact, either economic, ethic, recreational, environmental, or otherwise; or 5) he is an appropriate party to assert the public's interest in the matter, as well as his own interest ...

*Housing Authority v. State ex rel. Velasquez*, 539 S.W.2d 911, 913–914 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.). Zoning determinations relate solely to the real estate and its use and not to who owns it or intends to occupy it. However, one must have a legal right which has been breached to have standing to seek redress for an injury. *Nobles v. Marcus*, 533 S.W.2d 923 (Tex.1976). In *Kircus v. London*, 660 S.W.2d 869, 872 (Tex.App.—Austin 1983, no writ), the court, holding that the appellant lacked standing to challenge constitutionally of a statute, said: "To have standing to challenge the constitutionality of a statute, a party must show that in its operation the statute is unconstitutional as to him in his situation: he must show that it has an adverse impact on his own rights... It is not enough to show that it may be unconstitutional as to others." Without an interest in the property, appellant had no legal right to be breached, and therefore, had no standing to challenge zoning decisions concerning that property.

Next, appellant claims that it had standing to represent the mentally retarded people who might have lived in the facility. Appellant claims this standing under the Texas Mentally Retarded Persons Act, which states in pertinent part:

As used in this Act: "Mentally retarded person" means a person determined by a comprehensive diagnosis and evaluation to be of subaverage general intellectual functioning with deficits in adaptive behavior.

Tex.Rev.Civ.Stat.Ann. art. 5547–300 § 3(7) (Vernon Supp. 1982–83).

Every mentally retarded person shall have the right to live in the least restrictive setting appropriate to his individual needs and abilities. This includes the person's right to live in a variety of living situations, such as the right to live alone, in a group home, with a family, and in a supervised, protective environment.

Tex.Rev.Civ.Stat.Ann. art. 5547–300 § 7 (Vernon Supp. 1982–83).

A person who willfully and wrongfully violates the rights guaranteed in this Act of any mentally retarded person shall be liable to the person injured by the violation ... (Monetary relief)

Tex.Rev.Civ.Stat.Ann. art. 5547–300 § 64(a) (Vernon Supp.1982–83).

An action brought under this section may be brought by the person injured, by a parent if the person is a minor, by a guardian if such person has been adjudicated incompetent, or by a next friend in accordance with Rule 44 of the Texas Rules of Civil Procedure.

Tex.Rev.Civ.Stat.Ann. art. 5547–300 § 64(d) (Vernon Supp. 1982–83).

The attorney general and the district attorneys and county attorneys ... may bring an action in the name of the state against any person to enjoin violations of, and to enforce compleance with ... this Act ...

Tex.Rev.Civ.Stat.Ann. art. 5547–300 § 65(a) (Vernon Supp.1982–83).

■ Appellant claims that because a corporation is a person under § 3(26) of this act, it is entitled to bring suit as a "person injured." The act, however, clearly restricts recovery to mentally retarded persons and to those entitled to bring suit in their behalf pursuant to § 64(a), (d). A corporation is not listed in those sections, and is not entitled to recovery. In fact, it seems that a corporation is defined as a person for determining what "persons" are liable under the act (i.e. "person who will-

fully and wrongfully violates the rights guaranteed in this Act ...").

 Appellant cites *Cleburne Living Center, Inc. v. City of Cleburne,* 726 F.2d 191 (5th Cir.1984), for the proposition that a corporate challenger to a city zoning ordinance has standing to litigate its Revenue Sharing Act antidiscrimination claims. However, there is a basic difference between the challenge in *Cleburne Living Center* and the instant case. The challenger in *Cleburne Living Center* had a leasehold interest in the affected property and one of its major stockholders owned the affected property. Because it does not have standing on its own, appellant is not able to utilize the rule of *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), that a third party having standing in its own right can assert rights on behalf of another third party.

 Appellant also claims to have standing to represent the mentally retarded people that might have lived in the facility under the 42 U.S.C. § 1983 (Civil Rights Act) and cites *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) in support of this contention. The Supreme Court in that case said that

> ... the prudential standing rule ... normally bars litigants from asserting the rights and legal interests of others in order to obtain relief from injury to themselves.... Even in the absence of injury to itself, an association may have standing solely as the representative of its members.

*Warth,* however, involved a zoning challenge by an association of member businesses that the court said did not but might have had standing. In our case, no such association exists to give Develo-cepts authority to represent retarded people. Develo-cepts, having no contractual or property interest in the property in question, has no standing in its own right. Furthermore it has no standing to represent the mentally retarded people who might have lived in the facility. We overrule point of error two.

Accordingly, we affirm the judgment of the trial court.