MILLER AV. v. LAKE LBJ 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-082-CV





J. W. MILLER AVIATION, INC.,


 

 APPELLANT


vs.





LAKE LBJ INVESTMENT CORP., ET AL.,



 APPELLEES



 




FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT



 NO. 6733A, HONORABLE CLAYTON E. EVANS, JUDGE 


 

 



 Lake LBJ Investment Corporation and others (collectively, "Lake LBJ"), appellees,
owners of the airport at Horseshoe Bay, sued J. W. Miller Aviation, Inc. ("Miller Aviation"),
appellant, record owner of a two-acre tract adjacent to the airport on which an airplane fuel and
maintenance facility was operated. Lake LBJ complained of various actions by Miller Aviation
in connection with its operation of the maintenance facility; Lake LBJ also sought cancellation of
an "airstrip easement" it had granted to Miller Aviation when Lake LBJ sold the two-acre tract
to Miller Aviation in 1974. Miller Aviation counterclaimed, alleging that Lake LBJ had tortiously
interfered with its business relations and had engaged in a conspiracy to damage or destroy its
business. The trial court dismissed Miller Aviation's counterclaims for lack of standing and
severed that portion of the cause from Lake LBJ's pending claims. Miller Aviation appeals. We
will affirm.

PROCEDURAL BACKGROUND


 The trial court's dismissal was the culmination of protracted pre-trial proceedings. 
Approximately one month before the case was scheduled for trial, Lake LBJ filed a "plea in bar"
that contested Miller Aviation's standing to prosecute its counterclaims, asserting that Miller
Aviation had no justiciable interest in the causes of action asserted in those counterclaims. The
basis for this plea was the discovery, made during the deposition of Carl Oberholtzer, that in 1981
Miller Aviation had sold all of its business assets at the Horseshoe Bay airport to Valley Bowling
Lanes, Inc. ("Valley Bowling"), a Colorado corporation of which Oberholtzer was president and
majority owner and which was not authorized to do business in Texas. The plea asserted that, as
a result of this sale, Miller Aviation could not have sustained any damages and had no standing
because it did not own any interest in the airplane-maintenance business that Lake LBJ had
allegedly injured.

 A hearing on the plea was held on November 12, 1990, but did not result in an
immediate written ruling. Thirty days later, on December 12, 1990, Miller Aviation filed an
additional pleading in an effort to show a justiciable interest in the subject matter of the
counterclaims.

 No written order was signed until June 10, 1991, when the trial court signed two
separate orders; one order purported to abate prosecution of Miller Aviation's counterclaims,
while the other order purported to dismiss the counterclaims with prejudice. The abatement order
purported to give Miller Aviation thirty days from "the date of this Order" in which to show a
justiciable interest in the causes of action alleged in its counterclaims. In response to that order,
Miller Aviation filed, on July 9, 1991, an amended counterclaim in which it alleged that Valley
Bowling had, also on July 9, 1991, been formally merged into Miller Aviation; in a related
pleading, Miller Aviation filed copies of official merger documents.

 On October 21, 1991, following another hearing, the trial court signed an order
withdrawing both June 10 orders and dismissing Miller Aviation's counterclaims without
prejudice. This October 21, 1991, order explained that after the November 12, 1990, hearing on
Lake LBJ's plea in bar, the court had concluded that Miller Aviation had no justiciable interest
in, or standing to prosecute, the counterclaims asserted; that the court had given Miller Aviation
thirty days from the November 12, 1990, hearing date to produce sufficient evidence of its
justiciable interest; that Miller Aviation had filed its December 12, 1990, pleading in response to
the court's oral order; that, after taking the matter under advisement, the court had concluded that
Miller Aviation had failed to show a justiciable interest; that the abatement order dated June 10,
1991, was in error because the court did not intend to grant Miller Aviation an additional thirty
days to produce evidence of standing; and that the dismissal order dated June 10, 1991, was in
error because the court did not intend to dismiss Miller Aviation's counterclaims "with prejudice." 
Three days after this October 21, 1991, dismissal order was signed, the trial court signed an order
severing Miller Aviation's counterclaims from the remainder of the cause, making the dismissal
order final.



DISCUSSION


 In its first point of error, Miller Aviation alleges that the trial court erred in
withdrawing the June 10 abatement order. Because the two June 10 orders did not dispose of all
parties and issues in the lawsuit, both were interlocutory. See New York Underwriters Ins. Co.
v. Sanchez, 799 S.W.2d 677, 678-79 (Tex. 1990); Starnes v. Holloway, 779 S.W.2d 86, 93 (Tex.
App.Dallas 1989, writ denied). Trial courts are entitled to withdraw their interlocutory orders
at any time before final judgment. Buffalo Ranch Co. v. Burleson County Appraisal Dist., 783
S.W.2d 748, 749 (Tex. App.Houston [14th Dist.] 1990, no writ); Evans v. Hoag, 711 S.W.2d
744, 745 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).

 Miller Aviation asserts, however, that the withdrawal was improper in the present
case because it had "relied upon and complied with the Court's order [of abatement]" by
effectuating a merger between Miller Aviation and Valley Bowling. We disagree. First, Miller
Aviation cites no authorityand we have found nonefor the proposition that a party's reliance
on an interlocutory order can destroy the trial court's inherent authority to withdraw or change
the order. Such a rule would, in our view, unduly hamper a trial court's ability to correct prior
erroneous orders and fashion appropriate relief, and we decline to adopt it. The supreme court's
opinion in Elder Construction, Inc. v. City of Colleyville, 839 S.W.2d 91 (Tex. 1992), is not to
the contrary; indeed, it supports our conclusion.

 Moreover, there is evidence in the record from which the trial court could have
concluded that Miller Aviation did not, in fact, rely on the June 10, 1991, abatement order. The
final order of October 21, 1991, recites that following the November 12, 1990, hearing on Lake
LBJ's plea in bar "the cause was abated for thirty days for Defendant J. W. Miller Aviation, Inc.
to show a justiciable interest in the suit, and/or standing to prosecute same . . . ." The order
further recites that, after taking Lake LBJ's motion under advisement in order to review Miller
Aviation's December 12, 1990, pleading, the court ruled that Miller Aviation "had failed to show
a justiciable interest in the litigation and was without standing to prosecute the action." Miller
Aviation does not challenge the accuracy of these recitations. In the absence of direct evidence
to the contrary, recitations in a judgment are presumed to be true. Armstrong v. State, 781
S.W.2d 937, 942 (Tex. App.Dallas 1989), aff'd, 805 S.W.2d 791 (Tex. Crim. App. 1991);
Weaver v. Citizens Nat'l Bank, 490 S.W.2d 887, 891 (Tex. Civ. App.Waco 1973, no writ). 

 In addition, the trial court's docket entry from the November 12, 1990, hearing
notes that the court found that Miller Aviation had failed to show a justiciable interest in the
subject matter of the suit and then recites: "Ordered that case be abated for 30 days for J.W.
Miller Aviation, Inc. to show standing . . . ." Lake LBJ states in its brief to this Court that "[o]n
the day of the hearing, November 12, 1990, the trial court announced its decision on the
Appellee's Plea by telephone communication to the parties' attorneys." Miller Aviation does not
contest the accuracy of these statements, but asserts only that following the November 12 hearing
the trial court did not pronounce its decision "in open court." Additional confirmation of the trial
court's actions following the November 12 hearing is evidenced by the fact that Miller Aviation
filed its initial set of supplemental pleadings, in an effort to show standing, on December 12,
1990, exactly thirty days after the November 12 hearing.

 These background facts raise a reasonable inference that the statement in the June
10, 1991, abatement order purporting to give Miller Aviation thirty days from "the date of this
Order" (i.e., from June 10, 1991) was an obvious error and could not have been relied on in good
faith by Miller Aviation. We overrule Miller Aviation's first point of error.

 In its second point of error, Miller Aviation contends that the trial court erred in
concluding that Miller Aviation lacked standing to prosecute its counterclaims. Specifically,
Miller Aviation argues that it had standing because it was a "holder of legal title." We disagree.

 The trial court based its dismissal on its finding that Miller Aviation lacked both
standing and a justiciable interest in the litigation. (1) To prosecute a claim, a litigant must prove
under the substantive law a valuable right or interest in the subject matter of the controversy, such
that the relief sought will directly benefit the one who sues. Hunt v. Bass, 664 S.W.2d 323, 324
(Tex. 1984). The courts have identified five factors for determining standing: (1) if one has
sustained, or is in immediate danger of sustaining, some direct injury as a result of the wrongful
act of which one complains; (2) if one has a direct relationship between the alleged injury and the
claim sought to be adjudicated; (3) if one has a personal stake in the controversy;

(4) if the challenged action has caused one some injury in fact; or (5) if one is an appropriate party
to assert the public's interest in the matter as well as his own interest. Rodgers v. RAB Invs.,
Ltd., 816 S.W.2d 543, 546 (Tex. App.--Dallas 1991, no writ); Housing Auth. v. State ex rel.
Velasquez, 539 S.W.2d 911, 913-14 (Tex. Civ. App.--Corpus Christi 1976, writ ref'd n.r.e.). If
the plaintiff fails to show the requisite standing to maintain the action, dismissal is the proper
ruling. 1 Texas Civil Practice § 5:8, at 479 (Diane M. Allen, et al. eds., 1992 ed.); cf. Develo-cepts, Inc. v. City of Galveston, 668 S.W.2d 790 (Tex. App.--Houston [14th Dist.] 1984, no writ)
(dismissal for lack of standing affirmed).

 In the present case, Lake LBJ presented evidence that in January 1981 the airplane-maintenance business and all the business assets of Miller Aviation--but not all the liabilities--had
been sold to Valley Bowling. Thereafter Valley Bowling included the operation of the business
in its income-tax reporting. Although J. W. Miller Aviation, Inc. was not dissolved, Oberholtzer
testified that after January 1, 1981, Miller Aviation reported for franchise-tax purposes that it had
no assets and no gross receipts. All of the assets of Miller Aviation (excluding, presumably, the
purchase price) became assets of Valley Bowling. On behalf of Valley Bowling, Oberholtzer
himself took over the operation of the airplane-maintenance business at the Horseshoe Bay airport.

 On March 24, 1984, all of the stock of Miller Aviation was transferred to Valley
Bowling. When asked what Valley Bowling actually received in this stock transfer, given that it
had already purchased all of Miller Aviation's assets three years earlier, Oberholtzer replied that



the only thing that Valley Bowling Lanes would have received from the transfer
of stock into their name would have been for the clarification of the entire
operation, such as the license on the unicom station and the ability to use the seal
of J. W. Miller Aviation on any legal documents that we might come upon . . . .



Oberholtzer testified, however, that Valley Bowling had continued to use the name Miller
Aviation for the business, somewhat like a "d/b/a." (2)

 In response to this evidence, Miller Aviation presented evidence that, even after
the sale in 1981, record title to the real property continued to be held in the name of Miller
Aviation and various business activities of the airplane-maintenance business continued to be
conducted in the name of Miller Aviation. In contrast to the testimony in his deposition,
Oberholtzer stated in an affidavit that Valley Bowling was merely the parent corporation of Miller
Aviation, and that all business activities had always been conducted by Miller Aviation, not Valley
Bowling.

 Whether a party has standing is a question of law. Fieldton Co-op. Gin v. Wright,
259 S.W.2d 603, 605 (Tex. Civ. App.--Amarillo 1953, no writ); Ortiz Oil Co. v. Railroad
Comm'n, 62 S.W.2d 376, 381 (Tex. Civ. App.--Texarkana 1933, no writ). Under the particular
circumstances of the present case, however, the issue depends on a question of fact: what entity
owned the business that was allegedly injured by the actions of Lake LBJ? Despite that fact that
after January 1, 1981, the business continued to operate under the name of "Miller Aviation,"
there is ample evidence that the business and all its assets were in fact owned by Valley Bowling. 
Accordingly, the trial court was entitled to find as a fact that , at the relevant time, Miller
Aviation did not own the business allegedly injured and, therefore, did not have standing to sue
for damages allegedly inflicted on that business. Because there is sufficient evidence to support
such a fact finding, we cannot say that the trial court erred in dismissing the counterclaims on the
ground that Miller Aviation did not have standing to assert them.

 Nonetheless, Miller Aviation argues that it has standing because it was the "holder
of legal title." Although Miller Aviation does not state what relevant legal title it held, the cases
it cites for this proposition are inapposite because they involve suits by the holders of legal title
to the chose in action, not the holders of naked legal title to the property allegedly damaged by
the wrongful acts of the defendant. However, even if it were important that Miller Aviation held
record title to the real property in question, the injury alleged in Miller Aviation's counterclaim
was to the business, not the real property. The record contains ample evidence that in January
1981 all title--both legal and equitable--to Miller Aviation's business was transferred to Valley
Bowling.

 Finally, Miller Aviation argues that the merger between Miller Aviation and Valley
Bowling gave it standing to assert the counterclaims. We need not reach this question, however,
because the evidence of a merger was submitted to the trial court long after the court's abatement
period of thirty days from November 12, 1990, had passed. Under the circumstances of the
present case, we cannot say that the trial court abused its discretion in disregarding such evidence. 
We overrule Miller Aviation's second point of error.

 Miller Aviation argues in its third point of error that, in effect, the trial court's
dismissal was one for want of prosecution under Rule 165a of the Texas Rules of Civil Procedure;
accordingly, it argues that the trial court erred in failing to grant it a hearing on its "motion to
reinstate." This argument is without merit; the trial court's order of October 21, 1991, makes
clear that the dismissal was based on a lack of "standing" and "a justiciable interest in the
litigation." Therefore, because the dismissal was not rendered for want of prosecution, Rule 165a
does not apply. We overrule Miller Aviation's third point of error.

 The judgment of the trial court is affirmed.



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: January 13, 1993

[Do Not Publish]

1.   One noted commentator has stated that "justiciable interest" actually relates to
whether a justiciable controversy exists, while "standing" relates to whether the plaintiff is a
proper person to maintain the action. See 1 Roy W. McDonald, Texas Civil Practice § 5:8, at
478-79 (Diane M. Allen, et al. eds., 1992 ed.). Although McDonald acknowledges that the
line between the two is "a fine one" and that the courts have provided little guidance, id. at
479 n.42, it appears to us that, strictly speaking, the issue in the present case is one of
standing.
2.   Miller Aviation does not contend that it brought its counterclaims under its assumed
or common name pursuant to Rule 28 of the Texas Rules of Civil Procedure. While we
do not address the possible effect of the rule on the present case, we do note that the true
party in interest--Valley Bowling--apparently is not authorized to do business in Texas and
therefore would be prohibited from maintaining an action in any court of this State. See
Tex. Bus. Corp. Act Ann. art. 8.18(A) (West 1980).