TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00022-CV






Concho Residential Services, Inc., Appellant



v.



MHMR Services for the Concho Valley a/k/a Concho Valley Center for Human
Advancement, in its Capacity as an Unincorporated Association, its Capacity as a Mental
Retardation Authority, and as a Purported Community MHMR Center; James Young;
Joe Finn; Karen Sheppard; John Brubaker; The Texas Council of Community Mental
Health Mental Retardation Centers, Inc.; Spencer McClure; Texas Council Risk
Management Fund; Board of Trustees of the Texas Council Risk Management Fund, as
Trustee of the Liability Trust Account, the Property Trust Account, and the Workers'
Compensation Trust Account; Brain Crews; JI Specialty Services, Inc.; Central Plains
Center for MHMR and Substance Abuse; Richard Hall; Hector Cantu; James Coffey;
Ruby Guttierez; Sheirran Hughes; Brenda Morris; Jacqueline Shannon; Roger Sidener;
Hale County; Tom Green County; and City of San Angelo, Appellees





FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. CV92-0444-B, HONORABLE ROYAL HART, JUDGE PRESIDING 






 Appellant Concho Residential Services, Inc. ("CRS") sued appellees MHMR
Services for the Concho Valley (Concho Valley) and 22 others (1) for damages and injunctive relief,
alleging multiple statutory and common-law causes of action. The trial court rendered summary
judgment that CRS take nothing, disposing of all causes of action against all appellees. CRS
perfected this appeal. We will affirm in part and dismiss the cause in part.

FACTUAL AND PROCEDURAL BACKGROUND



 This case involves the expansive legislative scheme for providing mental health and
mental retardation services to the citizens of Texas. The Texas Department of Mental Health and
Mental Retardation ("TDMHMR") and other governmental entities operating under its direction
shoulder the responsibility of providing the administration and delivery of mental health and
mental retardation services to the public. See Tex. Health & Safety Code Ann. §§ 531.001-615.002 (West 1992 & Supp. 1999). A key element in the statutory scheme is the establishment
of mental health and mental retardation community centers, which provide the needed services to
mentally disabled persons at a local level under the supervision of TDMHMR. These community
centers are created by local governmental entities such as counties, municipalities, or hospital
districts, or a combination of entities joining together. See id. § 534.001. Community centers
are, by statutory definition, "an agency of the state, a governmental unit, and a unit of local
government." Id.

 Also key in the statutory scheme is the creation of Mental Health or Mental
Retardation Authorities ("MRAs"). MRAs are selected by TDMHMR and contract directly with
the agency. It is the duty of the MRA to ensure that the statutorily mandated services are provided
in its designated service area and to oversee state-funded community-based services. See id.
§§ 534.052-.070. MRAs, in turn, work with community centers, as well as private entity
providers of mental retardation and mental health services. Each MRA acts as the referral center
for MHMR services in its service area.

 At all times relevant to this suit, CRS was a for-profit provider of residential
facilities and services to mentally retarded persons. Concho Valley was both a community center
and a designated MRA.

 Although CRS asserted numerous claims against the various appellees, the crux of
CRS's complaint is that Concho Valley and several of its employees allegedly blocked potential
clients' access to CRS's residential facilities. CRS alleges that Concho Valley conspired with the
City of San Angelo and Tom Green County--the local governmental creators of Concho
Valley--to limit CRS's business; alternatively, CRS argues that the City of San Angelo and Tom
Green County are vicariously liable for Concho's conduct. CRS also sought an injunction
prohibiting Concho Valley from being a member of the Texas Council, a nonprofit corporation
made up of community centers from all around Texas. The remaining appellees are asserted to
be either directly liable for their participation in the conspiracy and other fraudulent acts, or
derivatively liable due to their association with Concho Valley or the Texas Council.


DISCUSSION



 CRS presents sixteen issues for this Court's review. The first complains generally
that the trial court erred in granting summary judgment disposing of all of its causes of action
against all appellees. (2) Issue two concerns the trial court's denial of CRS's request for injunctive
relief. Issues three through six assert error related to the trial court's refusal to grant a default
judgment against Tom Green County. Issue seven concerns CRS's antitrust cause of action. The
eighth issue asserts generally that the trial court erred in dismissing the claims against Hale
County. Issue nine addresses CRS's claims brought under the Deceptive Trade Practices-Consumer Protection Act ("DTPA"). (3) The tenth and eleventh issues concern federal claims for
violation of the Racketeer Influenced Corrupt Organizations Act ("RICO") (4) and "section 1983." (5) 
Issue twelve complains of the trial court's disposal of various common-law claims. Issue thirteen
asserts error related to the dismissal of CRS's statutory claims grounded in the Persons with
Mental Retardation Act of 1977. (6) Issue fourteen generally contends that the trial court erred in
disposing of the vicarious liability claims against Central Plains. The final two issues complain
of procedural rulings by the trial court.


Antitrust Liability


 CRS asserted claims under the Texas Free Enterprise and Antitrust Act of 1983
("Antitrust Act" or "Texas Act") (7) against Concho Valley; Concho Valley employees Finn,
Sheppard, and Young; Tom Green County; the Texas Council; McClure (Council director); and
Central Plains, a community center and member of the Council. CRS argues that the named
appellees violated the Antitrust Act by conspiring to restrict the access of potential clients from
CRS's services. The appellees respond that their conduct is "immunized from antitrust liability
by exemptions derived directly from the Texas Antitrust Act and from federal laws incorporated
by the Act." We agree.

 The purpose of the Antitrust Act is to promote economic competition in commerce
in Texas. See Tex. Bus. & Com. Code Ann. § 15.04 (West 1987). As such, the restraint of trade
or commerce is made unlawful. See id. § 15.05(a). The 1983 Act was meant to be a major
reform and modernization of Texas antitrust law and is modeled after the federal Sherman
Antitrust Act and Clayton Act. See Caller-Times Publishing Co. v. Triad Communications, Inc.,
826 S.W.2d 576, 579-80 (Tex. 1992). The Texas Act explicitly states that its provisions "shall
be construed . . . in harmony with federal judicial interpretations of comparable federal antitrust
statutes . . . ." Bus. & Com. Code § 15.04. It is to one of these federal judicial interpretations
that we now turn.

 Since 1943, the United States Supreme Court, in interpreting federal antitrust
statutes, has recognized that antitrust laws do not apply to anti-competitive restraints imposed "as
an act of government." Parker v. Brown, 317 U.S. 341, 352 (1943). Parker involved a
marketing program adopted pursuant to the California Agricultural Prorate Act governing the 1940
California raisin crop. Brown, a producer of raisins, complained that the program violated the
Sherman Act. The Court rejected this contention, relying on principles of federalism and state
sovereignty, holding that the Sherman Act should be interpreted as a prohibition on individual,
not "state action." Id. at 352. Because the program was not the product of a private agreement
or combination by others in restraint of trade, it did not violate the Sherman Act. Id. at 351. The
Court stated: "The state in adopting and enforcing the prorate program made no contract or
agreement and entered into no conspiracy in restraint of trade or to establish monopoly but, as
sovereign, imposed the restraint as an act of government which the Sherman Act did not undertake
to prohibit." Id. at 352. Because the Texas Act specifically adopts federal judicial interpretation
of federal antitrust law, we are bound to apply the Parker state action exemption to the Texas Act. 
See Bus. & Com. Code § 15.04.

 Texas has chosen to regulate the health and welfare of its mentally challenged
citizens through a comprehensive statutory scheme, rather than leaving the availability of services
to the marketplace. We believe this regulation fits squarely within the Parker exemption for an
"act of government by the State as sovereign." See City of Lafayette v. Louisiana Power & Light
Co., 435 U.S. 389, 413 (1978) (discussing the Parker exemption); see also City of Columbia v.
Omni Outdoor Advertising, Inc., 499 U.S. 365, 370 (1991) (confirming Sherman Act does not
apply to anti-competitive restraints imposed by states as an act of government). As in Parker,
Texas has not entered into a contract or agreement with an individual to establish a monopoly and
is not engaged in a conspiracy to restrain for-profit entities from providing services to mentally
challenged persons. Rather, the state has decided to pursue a policy of replacing competition with
regulation.

 The statutory scheme charges TDMHMR with governing the state policies
concerning mentally disabled persons. In turn, local community centers are created to carry out
the state's policies, with extensive oversight by TDMHMR. By definition, community centers are
agencies of the state. See Health & Safety Code § 534.001. As state agencies engaging in acts
of government by the state, these centers enjoy antitrust immunity under the state-action
exemption. See Bates v. State Bar of Arizona, 433 U.S. 350, 360-62 (1977); Benton, Benton &
Benton v. Louisiana Pub. Facilities Auth., 897 F.2d 198, 199, 203 (5th Cir. 1990). (8) We conclude
that the Parker state-action exception is applicable to statutorily created state agency community
centers such as Concho Valley and Central Plains.

 In addition, the Texas Act includes its own state-action exemption. Section 15.05
of the Antitrust Act specifically exempts "actions required or affirmatively approved by any statute
of this state . . . or by a regulatory agency of this state . . . acting under . . . statutory authority
vesting the agency with such power." See Bus. & Com. Code § 15.05(g). Accordingly, we hold
that the trial court properly granted a take-nothing summary judgment against CRS on its antitrust
claims against Concho Valley and Central Plains.

 Furthermore, the individuals Finn, Sheppard, and Young, as employees of Concho
Valley, also enjoy the benefits of the Parker state-action exemption. The state-action doctrine
applies equally to the officers and agents of the governmental body who participate in the
challenged conduct. See Foley v. Alabama State Bar, 648 F.2d 355, 359 (5th Cir. 1981) (citing
City of Lafayette, 435 U.S. 389). We hold the trial court did not err in disposing of CRS's
antitrust claims against these individuals.

 Similarly, the Texas Council and its director McClure enjoy the benefits of the
Parker state-action doctrine. State-action immunity extends to private persons and entities taking
a role in implementing state policy. See Benton, 897 F.2d at 204. The controversy in Benton
involved a state agency's policy of always using the same law firm as bond counsel. Attorneys
from a law firm not selected sued both the agency and the chosen private attorneys, alleging
antitrust violations. The court found that not only was the agency protected by the state-action
exemption, the private attorneys selected to perform services for the public agency were also
shielded by the doctrine. See id.

 In the instant case, the summary judgment evidence shows that the Texas Council
is created and governed by its community center membership for the sole purpose of performing
services for the centers in their endeavors to provide services to mentally challenged Texans. 
Accordingly, the Texas Council and its agent McClure are entitled to the state-action exemption. 
We hold that the trial court did not err in disposing of CRS's antitrust claims against Texas
Council and McClure.

 Finally, CRS asserted antitrust claims against Tom Green County. Because the
County is also exempt from antitrust liability, this claim fails. The federal Local Government
Antitrust Act of 1984 expressly immunizes all local governmental entities from antitrust liability
under the Clayton Act. See 15 U.S.C.A. §§ 34-36 (West 1997). Counties are included in the
definition of "local government." Id. § 34. As noted previously, the purpose of the Texas Act
was to drastically reform Texas antitrust law to mirror federal antitrust law. See Caller-Times,
826 S.W.2d at 579-80. The legislature explicitly adopted federal judicial interpretations of
comparable federal antitrust statutes, and further provided that nothing in the Antitrust Act should
be "construed to prohibit activities that are exempt from the operation of the federal antitrust
laws." See Bus. & Com. Code §§ 15.04, 15.05(g). We believe these expressions of the
legislature incorporate the local government exemption for counties contained in the Local
Government Antitrust Act. Further, as previously noted, the Texas Act also includes its own
state-action exemption, which we conclude is expansive enough to cover the County's participation
in the anti-competitive scheme. See id. § 15.05(g). Accordingly, we hold that the trial court did
not err in dismissing CRS's antitrust claims against Tom Green County.


Lawfully Formed Community Centers


 As will be made clear later in this opinion, CRS's causes of action for DTPA
violations, RICO violations, and common-law torts are premised on its assertion that Concho
Valley and Central Plains are not legally constituted community centers and thus are not
governmental entities entitled to sovereign immunity. Accordingly, we turn to the threshold issue
of the community centers' legitimacy.


 1.  Failure for Lack of Contract

 Concho Valley and Central Plains were established in June 1966 and July 1967,
respectively, pursuant to article 3 of the Mental Health and Mental Retardation Act ("MHMRA")
as enacted in 1965. See Act of April 5, 1965, 59th Leg., R.S., ch. 67, § 1, 1965 Tex. Gen. Laws
165, 171 (since repealed and codified as amended at Health & Safety Code Title VII). Section
3.01 of the MHMRA, as it existed at the community centers' creation, provided:


One or more cities, counties, hospital districts, school districts, rehabilitation
districts, state-supported institutions of higher education, and state-supported
medical schools, or any combination of these, may cooperate, negotiate, and
contract with each other through their governing bodies to establish and operate a
community center.



Id.


 It is undisputed that the creating entities of Concho Valley and Central Plains did
not enter into written contracts to establish the two community centers. CRS urges this Court to
read the above-quoted language to require a written contract as a prerequisite to the valid
establishment of the community centers. We decline to do so.

 We read section 3.01, as written in 1965, to allow the joint creation and operation
of a community center by cooperation, negotiation, or contract between local governmental
entities. Clearly, the legislature meant to authorize the creation of community centers by means
of contract. It appears that the legislature may have anticipated these local entities were likely to
enter into contracts when forming joint community centers. However, there is nothing to indicate
that the entities were required to form a written contract, or that the failure to do so would
invalidate the legal existence of a jointly formed community center. (9)

 Even assuming, however, that the version of section 3.01 applicable in 1967 could
somehow be construed to require a contract in the formation of a community center, the record
shows that in 1967 the creating entities of Central Plains did enter into a written agreement
governing the selection of trustees for the center. In November 1989, the sponsoring local
government creators of Concho Valley adopted written procedures setting forth, among other
things, the selection of trustees, as required by the version of section 3.01 applicable in 1989. See
Act of June 20, 1987, 70th Leg., R.S., ch. 956, § 3.01, 1987 Tex. Gen. Laws 3194, 3211 (since
repealed and codified as amended at Health & Safety Code Title VII). Therefore, at the time the
present lawsuit was filed, and only months following the date CRS alleges Concho Valley's
offending conduct began, both centers had written contracts in place.

 We decline to invalidate Concho Valley and Central Plains' 30-year history as
legally created community centers for lack of written contracts at their inception.


 2.  Failure as Incorporated Entity

 CRS next argues that because Central Plains was incorporated from 1969 to 1996
as a nonprofit corporation, it cannot be a valid community center. Basically, CRS contends that
because governmental entities may not legally fund a corporation, and because the sponsoring
governmental entities provide Central Plains with funding, Central Plains must not be a
community center.

 We are unpersuaded by this argument. Central Plains was incorporated pursuant
to the Texas Non-Profit Corporation Act. (10) The summary-judgment evidence shows that Central
Plains exercises only public functions for public purposes under the control of the State. Contrary
to CRS's assertions, Central Plains is governed by a board of trustees appointed by the
participating local governmental entities creating the community center. Nothing in the statute
authorizing the creation of community centers indicates that a center may not be a nonprofit
corporation properly formed under the Texas Non-Profit Corporation Act. We fail to see how
Central Plains' nonprofit corporate status strips it of its identity as a governmental entity.

 We reject CRS's contention that Concho Valley and Central Plains are not valid
community centers. Having so held, we turn to those causes of action asserted by CRS turning 
on the premise that the centers are invalid, and thus not governmental entities entitled to sovereign
immunity.


RICO Claims


 CRS contends in its tenth issue that the trial court erred in disposing of its cause of
action asserting RICO violations. As conceded by CRS in its brief to this Court, however, its
RICO claims fail if this Court finds Concho Valley and Central Plains are legitimate community
centers entitled to sovereign immunity from these claims. Moreover, CRS's RICO claims against
appellees other than Concho Valley and Central Plains are premised on their alleged improper
holding out of the community centers as legitimate. Because we reject CRS's contention that the
centers are illegitimate, the RICO claims against all appellees fail accordingly. We hold that the
trial court did not err in rendering judgment that CRS take nothing by its RICO cause of action.


Common-law Tort Claims


 CRS next challenges the trial court's rejection of its common-law tort claims against
all appellees, including claims of fraud, negligence, and tortious interference with contract. CRS's
challenge fails for two reasons.

 First, CRS provides no authority or argument to this Court that sovereign immunity
has been waived; accordingly, CRS has failed to present anything for us to review, and the
judgment should be affirmed on this ground alone. See Rodriguez v. Morgan, 584 S.W.2d 558,
559 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). To the extent CRS asserts that sovereign
immunity has been waived due to Concho Valley's and Central Plains' not being valid community
centers, and therefore not governmental units, we have rejected this argument, as discussed above.

 Second, appellees asserted grounds for summary judgment before the trial court that
are not addressed by CRS on appeal. In granting summary judgment against CRS on this claim,
the trial court did not specify the basis for its ruling; thus, the summary judgment may be affirmed
on any ground presented in appellees' motion. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d
623, 625 (Tex. 1996). If summary judgment may have been granted on a ground not challenged,
failure to address each theory that might support the trial court's rendition of summary judgment
requires an affirmance. See, e.g., Holloway v. Starnes, 840 S.W.2d 14, 23 (Tex. App.--Dallas
1992, writ denied), cert. denied, 510 U.S. 828 (1993). Because CRS failed to assign error to all
bases upon which the appellees moved for summary judgment on its common-law tort claims,
complaint on appeal has been waived.

 We hold that the trial court did not err in granting appellees a take-nothing
judgment on CRS's common-law tort causes of action.


DTPA Claims


 In its ninth issue presented, CRS asserts that the trial court erred in dismissing its
DTPA claims against all appellees because they are not shielded by sovereign immunity. We
disagree. To the extent CRS contends that the appellees do not enjoy sovereign immunity because
Central Plains and Concho Valley are "imposter" community centers, we have previously rejected
this contention. Although CRS presents additional creative arguments as to why the DTPA waives
sovereign immunity, none are viable. We hold there was no error.


Section 1983


 In its eleventh issue, CRS complains that the trial court erred in dismissing its
"section 1983" cause of action. See 42 U.S.C.A § 1983 (West 1994 & Supp. 1999). In granting
summary judgment against CRS on this claim, the trial court did not specify the basis for its
ruling; thus, the summary judgment may be affirmed on any ground presented in appellees'
motion. See Cincinnati Life, 927 S.W.2d at 625. Because CRS failed to assign error to all bases
upon which the appellees moved for summary judgment on its section 1983 claims, complaint on
appeal has been waived.


Injunction


 CRS sought to enjoin Concho Valley from membership in the Texas Council, a
nonprofit corporation created by community centers from throughout the state in a joint effort to
effectuate the centers' responsibilities to mentally challenged Texans. CRS claims that Concho
Valley lacks statutory authority to be a dues-paying member of a corporation such as the Council,
and that Concho Valley's membership violates that portion of article 3, section 52 of the Texas
Constitution prohibiting public entities from holding stock in a corporation. See Tex. Const. art.
III, § 52.

 Concho Valley counters that CRS lacks standing to seek an injunction to void its
membership in the Council. CRS argues it has standing because it pays ad valorem taxes on five
residential properties to Tom Green County and the City of San Angelo, which, in turn, fund
Concho Valley. Alternatively, CRS argues it has standing as a citizen with a peculiar interest
adversely affected by the actions of Concho Valley.

 We agree with CRS that, generally speaking, a taxpaying citizen has standing to
seek an injunction to enjoin public officials from the illegal expenditure of public funds. See, e.g.,
Lara v. Williams, 986 S.W.2d 310, 314-15 (Tex. App.--Fort Worth 1999, pet. filed) (citing
Osborne v. Keith, 177 S.W.2d 198, 200 (Tex. 1944); Hoffman v. Davis, 100 S.W.2d 94, 95 (Tex.
1937)). However, CRS does not seek to enjoin an expenditure by Tom Green County or the City
of San Angelo to Concho Valley, or Concho Valley's expenditure to the Council in the form of
membership dues. Rather, CRS seeks to enjoin Concho Valley from remaining a member of the
Council. Because CRS has not properly placed itself within the parameters of taxpayer standing,
CRS's taxpayer status cannot in itself provide it with the necessary standing to maintain its request
for injunction.

 CRS argues alternatively that it has standing to seek injunctive relief as a citizen
with a special interest adversely affected by Concho's membership in the Texas Council. The
general rule is that standing to bring suit depends upon some interest peculiar to the person
individually, and not as a member of the general public. See, e.g., Hunt v. Bass, 664 S.W.2d
323, 324 (Tex. 1984). More specifically, a person has standing to sue if:


(1) he has sustained, or is immediately in danger of sustaining, some direct injury
as a result of the wrongful act of which he complains; (2) there is a direct
relationship between the alleged injury and the claim to be adjudicated; (3) the
plaintiff has a personal stake in the controversy; (4) the challenged action has
caused the plaintiff some injury in fact, either economic, recreational,
environmental, or otherwise; or (5) the plaintiff is an appropriate party to assert the
public interest in the matter as well as his own interest.



Lake Medina Conservation Soc'y, Inc./Bexar-Medina-Atascosa Counties WCID No. 1 v. Texas
Natural Resource Conservation Comm'n, 980 S.W.2d 511, 515 (Tex. App.--Austin 1998, pet.
denied) (emphasis added); see also Amerada Hess Corp. v. Garza, 973 S.W.2d 667, 680 (Tex.
App.--Corpus Christi 1996, no writ); Billy B., Inc. v. Board of Trustees, 717 S.W.2d 156, 158
(Tex. App.--Houston [1st Dist.] 1986, no writ).

 CRS concedes that following the rendition of the final summary judgment in this
case, it sold its licenses by which it had been authorized to provide residential services to mentally
retarded persons. CRS asserts that it nevertheless maintains standing to seek an injunction because
it leases real property to a company that currently operates residential service centers on that
property. In effect, CRS contends that, because it has a financial stake in the profitability of its
lessee, who in turn is allegedly affected by Concho Valley's membership in the Council, it
maintains an interest adversely affected by Concho Valley's actions.

 We conclude that the lessor/lessee relationship between CRS and its tenant does not
create the special interest needed to support standing. Assuming Concho Valley's membership
in the Council is improper, CRS, as landlord, has not sustained, and is not in danger of sustaining,
a direct injury as a result of the membership. Further, the relationship between the possible injury
to CRS and the allegedly improper membership of Concho Valley in Council is attenuated, at best. 
We certainly cannot say the relationship is direct. Finally, CRS has no personal stake in Concho
Valley's membership, and CRS can point to no injury in fact resulting from the membership.

 Accordingly, we hold that CRS lacks standing to enjoin Concho Valley's
membership in the Texas Council. Because lack of standing is a ground for dismissal rather than
a take-nothing judgment on the merits, see Alexander v. City of Greenville, 585 S.W.2d 333, 334
(Tex. Civ. App.--Dallas 1979, writ ref'd n.r.e.), the proper course for this Court is to vacate the
portion of the summary judgment ordering that CRS take nothing by its request for injunctive
relief, and to render judgment dismissing that portion of the cause in its entirety.


Persons with Mental Retardation Act


 In its thirteenth issue presented, CRS urges this Court to find error in the trial
court's disposal of its claims under the Persons with Mental Retardation Act ("PMRA"). See
Health & Safety Code §§ 591.001-.025 (West 1992 & Supp. 1999). We decline.

 The PMRA creates a statutory cause of action to redress violations of the rights of
mentally retarded persons. See id. § 591.022. However, the right to sue is expressly limited to
the person injured, the injured party's parent or guardian, or next friend. Id. § 591.022(d). CRS
argues that it is a "person injured" and is therefore entitled to maintain suit. This precise
contention has been advanced and rejected previously in Develo-Cepts, Inc. v. City of Galveston,
668 S.W.2d 790, 794 (Tex. App.--Houston [14th Dist.] 1984, no writ) (PMRA "clearly restricts
recovery to mentally retarded persons and to those entitled to bring suit in their behalf"). CRS's
conclusory statement that Develo-Cepts is erroneous is not persuasive.

 Because CRS had no right to sue under the PMRA, the trial court properly granted
summary judgment disposing of this claim.


Claims Against Hale County


 All of CRS's claims against Hale County are derivative in nature. CRS asserts that
because Hale County participated in the creation, controlling, and funding of Central Plains, it is
vicariously liable for the wrongdoings and liabilities of Central Plains. Because we have
concluded that Central Plains is not liable under any theory advanced by CRS, there can be no
vicarious liability imputed to Hale County. We hold that the trial court properly granted summary
judgment for Hale County.


Interlocutory Default Judgment


 CRS complains in issues three through six that the trial court erred in: (1) refusing
to sign an interlocutory default judgment against Tom Green County after such judgment was
rendered on the record in open court; (2) holding a "show cause" hearing on whether the court
should sign an interlocutory default judgment against Tom Green County; (3) applying an
improper legal test at the "show cause" hearing; and (4) making findings of fact at the "show
cause" hearing.

 As a prerequisite to presenting an argument for appellate review, the record must
show that the complaint was first made to the trial court. See Tex. R. App. P. 33.1(a). CRS
failed to complain to the trial court regarding the default judgment issues presented, and failed to
obtain a ruling on any complaint; therefore, CRS has not preserved error for appellate review. 
See id.

 Even if CRS had preserved error, and assuming CRS is correct that the trial court
orally rendered an interlocutory default judgment, CRS's complaints are still without merit. The
trial court had broad, virtually unlimited discretion to vacate an interlocutory order prior to its
rendition of a final judgment. See Tex. R. Civ. P. 329b; Fruehauf Corp. v. Carrillo, 848 S.W.2d
83, 84 (Tex. 1993) (trial court has continuing power over interlocutory orders and may set them
aside at any time before final judgment is entered). We find no error.


Procedural Rulings


 In its final two issues presented, CRS complains of procedural rulings made in
connection with the granting of summary judgment. By a scheduling order dated June 6, 1997,
the trial court set deadlines after which the parties would not be permitted to file summary
judgment argument or evidence. That order gave CRS until July 11, 1997, to complete summary
judgment filings, and gave appellees until July 18, 1997. Appellees filed additional summary
judgment argument and evidence on July 18. CRS filed an omnibus motion requesting the trial
court to grant it leave to reply to the newly filed argument and evidence. The motion was denied. 
CRS asserts that the June 6 order improperly allowed appellees (as movants) the "last word" and
that the trial court erred in denying its omnibus motion.

 The record does not show that CRS complained to the trial court about the June 6
order or secured a ruling on any complaint; therefore, the point is waived. See Tex. R. App. P.
33.1. Furthermore, CRS provides no authority to this Court to support its assertion that it was
error to allow movants the "last word." Error was therefore waived. See, e.g., March v.
Wallace, 924 S.W.2d 423, 425 (Tex. App.--Austin 1996, no writ). Even if CRS's contention had
not been waived, we would still find it to be without merit. The order did not preclude CRS from
responding to any additional summary judgment argument or evidence presented by appellees;
rather, it required CRS to seek leave of court before doing so. We do not find an abuse of
discretion in the filing of the scheduling order.

 As to the denial of the omnibus motion, while the trial court did deny the motion's
general request for additional time to respond, the court granted CRS leave to file the only
evidence specifically identified by CRS as necessary to respond to appellee's July 18 filing. The
remainder of the omnibus motion, in essence, was simply a request for a continuance for more
time to gather potentially responsive evidence. The granting or denial of a continuance is within
the sound discretion of the trial judge. See State v. Crank, 666 S.W.2d 91, 94 (Tex. 1984). The
denial of a motion for continuance will not be disturbed unless the record shows a clear abuse of
discretion. See id. Given the extended time frame within which the parties filed and responded
to motions for summary judgment; the numerous motions for continuance that had previously been
granted in this case; and the fact that CRS was granted leave to file the evidence it contends was
responsive to appellee's July 18 filing, we conclude that the trial court did not abuse its discretion
by generally denying CRS's omnibus motion.


CONCLUSION



 We hold that CRS lacks standing to seek to enjoin Concho Valley from future
membership in the Texas Council; accordingly, we vacate that portion of the trial court's final
summary judgment that CRS take nothing by its request for injunctive relief and render judgment
dismissing that claim. Having found all remaining issues presented by CRS to be without merit,
we affirm the summary judgment in all other respects.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed in Part; Vacated and Dismissed in Part

Filed: August 26, 1999

Do Not Publish

1. There are 23 named appellees in this appeal, generally referred to collectively as appellees. 
As necessary, we will refer to appellees individually by name.
2. The trial court rendered the following orders: (1) summary judgment for Tom Green County
dated May 28, 1996, disposing of all claims against the county; (2) summary judgment for Concho
Valley, Young, Finn, Sheppard, Texas Council, McClure, and Central Plains dated October 29,
1996, disposing of all claims arising under the Texas Free Enterprise Antitrust Act; (3) summary
judgment for Hale County dated September 15, 1995, disposing of all claims against the County;
and (4) final summary judgment dated December 19, 1997, disposing of all claims against all
defendants.
3. See Tex. Bus. & Com. Code Ann. § 17.46 (West 1987 & Supp. 1999).
4. See 18 U.S.C.A. § 1961 (West 1984 & Supp. 1999).
5. See 42 U.S.C.A. § 1983 (West 1994 & Supp. 1999).
6. See Tex. Health & Safety Code Ann. §§ 591.001-.025 (West 1992 & Supp. 1999).
7. Tex. Bus. & Com. Code Ann. §§ 15.01-.52 (West 1987 & Supp. 1999).
8. This is to be contrasted with municipalities, which are not themselves sovereign, and
therefore carry a higher burden to demonstrate that their anti-competitive actions are authorized
by the state pursuant to the state's policy to replace competition with regulation. See Town of
Hallie v. City of Eau Claire, 471 U.S. 34, 40-42 (1985).
9. We note that section 3.01 was amended in 1969 to require the governing bodies creating a
community center to enter into a contract. See Act of June 12, 1969, 61st Leg., R.S., ch. 688,
§ 3, 1969 Tex. Gen. Laws 2010, 2012 (since repealed and codified as amended at Health & Safety
Code Title VII). We believe this supports our conclusion that prior to the amendment, when
Concho Valley and Central Plains were created, no contract was required.
10. Tex. Rev. Civ. Stat. Ann. art. 1396--1.01-11.01 (West 1997 & Supp. 1999).


 been waived, we would still find it to be without merit. The order did not preclude CRS from
responding to any additional summary judgment argument or evidence presented by appellees;
rather, it required CRS to seek leave of court before doing so. We do not find an abuse of
discretion in the filing of the scheduling order.

 As to the denial of the omnibus motion, while the trial court did deny the motion's
general request for additional time to respond, the court granted CRS leave to file the only
evidence specifically identified by CRS as necessary to respond to appellee's July 18 filing. The
remainder of the omnibus motion, in essence, was simply a request for a continuance for more
time to gather potentially responsive evidence. The granting or denial of a continuance is within
the sound discretion of the trial judge. See State v. Crank, 666 S.W.2d 91, 94 (Tex. 1984). The
denial of a motion for continuance will not be disturbed unless the record shows a clear abuse of
discretion. See id. Given the extended time frame within which the parties filed and responded
to motions for summary judgment; the numerous motions for continuance that had previously been
granted in this case; and the fact that CRS was granted leave to file the evidence it contends was
responsive to appellee's July 18 filing, we conclude that the trial court did not abuse its discretion
by generally denying CRS's omnibus motion.


CONCLUSION



 We hold that CRS lacks standing to seek to enjoin Concho Valley from future
membership in the Texas Coun